PHILIP V. MANWELL, Administrator of the Estate of BETSEY NYE, v. The Estate of STEPHEN MANWELL.

The certificate of the clerk of the proper office, upon a deed, that the same has been duly recorded, is sufficient to entitle it to be used as evidence, and the effect of the evidence is not defeated by producing a copy of such record, duly certified, showing that the clerk did not correctly record the deed, especially where such error does not affect the interest of the person against whom the evidence is offered.

Where one person, in terms, leases a portion of an entire farm, the rent to be paid in a specified proportion of the product of the whole farm, the remaining portion being the property of the lessee, and the lessee expressly stipulating to deliver such rent at a time and place named, he must sever that portion of the products which constitutes the rent, from the mass, or he will be liable upon his contract for the entire sum.

After verdict and motion in arrest of judgment, equivocal terms will be understood in that sense which is most favorable to sustaining the verdict, if equally consistent with the contract and circumstances of the case.

THIS was an appeal from the decision of commissioners appointed by the probate court for the district of Chittenden to examine and adjust all claims against the estate of Stephen Manwell, deceased, allowing a claim in favor of Elias Nye, and Betsey, his wife, against said estate. After the entry of the appeal in the county court, Elias Nye died and Betsey Nye prosecuted the suit as survivor. Before the trial came on in the county court, the said Betsey died, and Philip V. Manwell, administrator of the estate of the said Betsey, entered and prosecuted the suit. Dulcena Manwell was

administratrix of the estate of the said Stephen, deceased.

On the entry of the appeal in the county court, the plaintiffs filed the following declaration.

'And now the said Elias Nye and Betsey, his wife, by their
'Attorney, come and declare against Dulcena Manwell,
'of Richmond, in the county of Chittenden, administra-
'trix of the estate of Stephen Manwell, late of said Rich-
'mond, deceased, in a plea of covenant broken, for that
'whereas, heretofore, to wit, on the 25th day of April, A. D.
'1828, at Richmond aforesaid, by a certain indenture then
'and there made between the said Betsey (who was then
'Betsey Manwell, a feme sole) of the one part, and the said
'Stephen Manwell (who was then in life) of the other part,
'the counterpart of which said indenture, sealed with the
'seal of the said Stephen, the said Elias and Betsey now
'bring here into court, the date whereof is the day and year
'last aforesaid, the said Betsey did demise, lease, set and to
'farm let unto the said Stephen, during her natural life, her
'thirds, or third part of the estate of her former husband,
'Peter Manwell, late of said Richmond, deceased, of which
'he the said Peter died seized and possessed, (which third
'is situate in Richmond) which the said Betsey held as her
'dower in the estate of the said Peter, deceased; and the
'said Stephen (then in life) did thereby promise and agree
'to and with the said Betsey that he the said Stephen would,
'and that his executors and administrators should, keep and
'improve the same third part of said estate of the said Peter
'Manwell, deceased, which she, the said Betsey, then held as
'her dower therein, in a husband like manner, and keep the
'fences in good repair, and take care that neither the fences
'nor buildings should fall to decay for want of repairs, and
'that he, the said Stephen, would deliver to the said Betsey
'one sixth part of all the produce of every kind raised on the
'said third part, and also one sixth part of all the produce
'raised on the other two thirds of said estate, of which the
'said Peter Manwell, deceased, died seized, and of which the
'said Stephen was then seized and possessed, to be deliverd
'yearly as follows, the hay to be delivered in the barn at
'the usual haying season; the potatoes and other garden
'sauce to be delivered in the cellar at the usual season; the
'cider and apples to be delivered in the house or cellar, or

*Chittenden,*
*January,*
*1842.*

Adm'r of
Nye
*v.*
Estate of
Manwell.

CHITTENDEN,
January,
1842.

Adm'r, of
Nye
v.
Estate of
Manwell.

'wheresoever she, the said Betsey, should direct; the grain
'of all kinds to be delivered in the half bushel at the usual
'season of the year, fit for use, and the flax in the head, well
'dressed. And the said Stephen (then in life) did thereby
'further agree to and with the said Betsey that he, the said
'Stephen, would at all times furnish the said Betsey with
'necessary fire-wood, and water, and take care of all her cat-
'tle, horses and other live stock or creatures and see that all
'things of the like kind should be furnished and done, as by
'the said deed, here ready in court to be produced, will more
'fully appear.

'And the plaintiffs aver that the said estate of which the
'said Peter Manwell, deceased, died seized, consisted of his
'home farm, so called, containing one hundred and ninety-
'two acres of land, with a dwelling house and out-buildings
'thereon, and was situated in the towns of Richmond and
'Jericho, in said county of Chittenden, and that the third
'part thereof, of which the said Betsey was then and there
'endowed in due form of law, is described as follows, viz:
(describing the land).

'And the plaintiffs further aver that afterwards to wit: on
'the same 25th day of April, 1828, at Richmond aforesaid,
'the said Stephen (then in life) by virtue of said demise,
'entered into and upon all and singular the said demised
'premises, with the appurtenances, and became and was
'possessed thereof for the said term so to him thereof grant-
'ed as aforesaid.

'And the plaintiffs further aver that from and after the
'said 25th day of April, 1828, the said sixth part of the said
'land of which the said Betsey was seized and possessed as
'tenant in dower as aforesaid yielded annually, and there
'was annually during the time from the said 25th day of
'April, 1828, to the 2d day of March, 1837, (on which 2d
'day of March, 1837, the said Stephen died at Richmond)
'raised on said sixth part of said land, great crops and large
'quantities of produce, to wit: (describing the produce so
'raised,) and that the value of the one sixth part of the year-
'ly product of said land so set out as the dower of the said
'Betsey, as aforesaid, was not less than fifty dollars for each
'and every year, during all of said term.

'And the plaintiffs, further aver that the remaining two

'thirds of the said land of which the said Peter Manwell deceased, died seized, and of which the said Stephen ( then in life ) to wit, on the 25th day of April 1828, was then possessed, produced and yielded annually from the said 25th day of April, 1828, to the said second day of March, 1837, the day of the death of the said Stephen, and during all said time there was annually raised from the said remaining two thirds of said land, of which the said Peter Manwell, deceased died seized, great crops and large quantities of produce, to wit : ( describing the produce, ) and that the value of one sixth part of the yearly product of said two thirds of the said land of which the said Peter, deceased, died seized, and of which the said Stephen ( then in life but since deceased ) was then possessed, during all of said time from the said 25th day of April, 1828, to the said second day of March, 1837, was not less than one hundred and fifty dollars for each and every year of said term.'

CHITTENDEN,
January,
1842.

Adm'r. of Nye
v.
Estate of
Manwell.

The plaintiffs also averred the intermarriage of the said Betsey with the said Elias, and assigned breaches of the covenant as follows.

' And although the said Betsey hath always before her intermarriage with the said Elias, at all times, from the time of making said indenture to the time of her intermarriage with the said Elias, and although the said Elias and Betsey have at all times since the marriage of the said Betsey to the said Elias, hitherto well and truly performed, fulfilled, and kept all things in the said indenture by her the said Betsey on her part to be performed, according to the tenor and effect, true intent and meaning of the said indenture, to wit, at Richmond aforesaid, yet, protesting that the said Stephen Manwell did not in his life time perform, fulfil, or keep any thing in said indenture contained, on his part and behalf to be performed, fulfilled and kept, and that the said administratrix since the death of the said Stephen hath not kept, performed and fulfilled, any thing in said indenture contained, on the part of him the said Stephen to be performed, fulfilled and kept, according to the tenor and effect, true intent and meaning thereof, the said Betsey and Elias say that after the making of the said indenture and during the term thereby granted, to wit, on the 1st day of March, 1838, at Richmond aforesaid, there was due to the said Elias and

CHITTENDEN,
January,
1842.

Adm'r of Nye
v.
Estate of
Manwell.

'Betsey the whole of the sixth part of the yearly product
'or produce of the said third of the said land, of which
'the said Peter, deceased, died seized, which was set out
'to the said Betsey as her dower in said estate, and one
'sixth part of the yearly product or produce of the remaining
'two thirds of said land, of which the said Peter, deceased, died
'seized of each and every year during said term from the said
'25th day of April 1828, to the said first day of March 1837.

'And so the said plaintiffs say that the said Stephen, al-
'though often requested, did not in his lifetime keep his
'said covenant so by him made as aforesaid, but refused so to
'do, and that the said Dulcena, administratrix as aforesaid,
'hath not, since the death of the said Stephen, kept the said
'covenant so by him, the said Stephen, made as aforesaid,
'though requested, but hath broken the same, and to keep
'the same with the said Betsey hath hitherto wholly neglect-
'ed and refused, and still doth neglect and refuse, to the
'damage of the plaintiffs, as they say, the sum of one thousand
'dollars.'

The defendant pleaded, first, *non est factum*, and, second-
ly, 'that the said Stephen Manwell, in his lifetime, paid to
'the said Betsey the full amount of said rent in said lease
'specified by him to be paid, in manner and form as therein
'covenanted, to wit, at Richmond aforesaid, at the said times
'therein set for the payment thereof, and then and there
'performed fully and completely all other covenants in and
'by said lease by the said Stephen to be performed,' conclud-
ing with a verification. This plea was traversed and issues
were joined to the country.

On the trial in the county court the plaintiff introduced
the lease declared upon, and, from the certificate thereon,
made by the town clerk of Richmond, it appeared to have
been recorded in the town clerk's office in Richmond on the
12th of May 1828. There were two subscribing witnesses
to the lease, and it was acknowledged by both the lessor and
lessee before a justice of the peace. The defendant object-
ed to the admission of the lease upon the ground that it had
not been recorded, and showed a certified copy, from the
town clerks's office in Richmond, of a different lease of the
same date. In the lease offered by the plaintiff, the defen-
dant's intestate covenanted to deliver one *sixth* part of the

CHITTENDEN,
*January,*
1842.

Adm'r of Nye
*v.*
Estate of
Manwell.

produce raised on the land of the lessor, and, in the copy, he covenanted to deliver one *third* part of such produce. In all other respects the lease and copy were alike.

The court overruled the objection and admitted the lease. The plaintiff then introduced evidence tending to prove the value of the several kinds of produce, which were by said lease to be rendered annually by the lessee as rent. It was admitted, by the plaintiff, that the rent of the first year had been paid. The plaintiff's witnesses testified that the several kinds of produce mentioned in said lease, to wit, the hay, potatoes, garden vegetables, cider, apples, grain, &c., were annually placed by the lessee, in the places and buildings specified in said lease, but without setting apart any portion thereof for the lessor, and that for two or more years the plaintiff had stock of her own, to which some portion of the hay and grain were foddered out. Upon this evidence the counsel for the defendant requested the court to charge the jury that if they believed, from the evidence in the case, that the said Manwell in his lifetime had annually delivered or placed the produce, which he was annually to return as rent, into the specific places mentioned in said lease, it was a compliance with, or fulfilment of, the covenant in the lease, without any designation of the lessor's portion thereof, and that if afterwards the said Stephen Manwell foddered or used more than his share, that would be a matter of accounting between the parties, and not a breach of the covenant. But the court neglected so to charge the jury, and did charge them, among other things, to find the value of the crops mentioned in said lease, which were to be delivered by the said Manwell, deduct such payments as had been made, if any, and what had been consumed by the plaintiff's stock, and return their verdict for the balance. The jury returned a verdict for the plaintiffs, and the defendant excepted to the decisions and charge of the county court.

The defendant then moved in arrest of judgment for the insufficiency of the declaration, which motion the county court overruled, and to this decision, also, the defendant excepted.

*W. P. Briggs and A. Peck,* for defendant.

Covenants are to be construed according to their spirit and intent. 6 Johns. R. 49. 3 Dane's Dig. 576.

CHITTENDEN,
January,
1842.

Adm'r of Nye
*v.*
Estate of
Manwell.

1. Was it the intent of the parties to this lease that there should be a severance of the crops at the harvesting?

A hay crop cannot be justly and equitably divided in the haying season (which is the time intended by the lease for putting it in the barn) for reasons well known to intelligent farmers. Hay is of different qualities, and that even upon the same acre of meadow, and cannot all be cured alike in the meadow. And hence it must have been the intention to gather the whole crop into the barn, and then at the proper season to divide by weighing or admeasurement, or else by graduating the stock to their respective proportions.

Judging from the whole lease, this last method would seem to have been the one intended, because the lessee covenants to " water and take care of all her cattle, horses," &c.

There was manifest error in the court below in directing the jury, as matter of law, to give damages for the apples and cider, when the case shows no evidence tending to prove that they were not delivered in strict accordance with the wishes of the lessor. Yet the jury were told to find the value of the whole crops, and return a verdict for the balance.

The construction, assumed by the court below, involves also this further difficulty. Here was an eight years occupation of the premises, and suppose there had been annually a severance and specific deposit of the lessor's portion of the crops but no taking away by her. Then the lessor must perform an impossibility, or be liable for a breach of covenant, because the literal construction of the lease holds him to deposit in " the barn" although " the barn " could not contain the fourth part.

We say, therefore, that the delivery of the crops, in the places designated by the lease, was a satisfaction of the covenants, and that without a severance of them from the lessor's portion. Because we insist that such delivery, *ipso facto*, vested the title to the one third and one sixth portions thereof in the lessor, and made them liable to attachment by her creditors for the reason that here was a mere hiring upon shares, subject to the mutations of the seasons, and to be paid in specie.

The rules of law, applicable to notes or contracts payable in specific articles, can have no bearing in the construc-

tion of these covenants, because here the parties were tenants in common of the crops from the moment of their germination in the earth, and both parties must join in a suit for an injury to or destruction of them, and nothing but a delivery of the identical crops would satisfy the covenants. 3 Dane's Dig. 471.

CHITTENDEN,
*January*,
1842.

Adm'r of Nye
*v.*
Estate of
Manwell.

If the court are in doubt as to what was the real intention of the parties in these covenants, they will be relieved by the construction which the parties themselves have put upon them. The case shows an eight years occupation and entire satisfaction for the first year, and an acquiescence by the lessor in the mode of delivery by putting her stock there to be foddered for two subsequent years, or at least a waiver of the breach if there was one. *Cook* v. *Booth,* Cowper 819.

2. The judgment ought to have been arrested for the insufficiency of the declaration, as no breach is alleged. The non-delivery of the crops, should have been averred. The formal conclusion "and so the said Stephen did not keep his said covenants" is only alleged as *an inference from what precedes,* and is unnecessary and inoperative. *Gordon* v. *Kennedy,* 2 Binn. 287. Hob. 198, 233. *Hambleton* v. *Veere,* 2 Saund. R. 169.

Nothing is presumed after verdict but what is alleged. If the fact omitted is necessarily included in, or forms a well known ingredient of the main fact or proposition alleged, the defect may be cured by verdict. In this case there is no general allegation that necessarily includes the fact omitted, to wit, that the lessee did not deposit the crops as stipulated in the covenant. The most that can be claimed is that the fact alleged, to wit, that a sum was due on the covenant, is an inference from the fact omitted, and which ought to have been alleged ; but, as it is an inference from the whole declaration, if the verdict cures this defect, it would equally cure an omission to set forth the covenant, and therefore dispenses with the whole declaration. *Hazleton* v. *Weare,* 8 Vt. R. 480. *Harding* v. *Cragie,* 8 Vt. R. 501. *Wright* v. *Clements,* 5 Com. L. 358. *Gordon* v. *Kennedy,* 2 Binn. 287. *Hambleton* v. *Veere,* 2 Saund. R. 169. A demand for a *severance* of the crops ought to have been alleged and proved.

CHITTENDEN,
January,
1842.

Adm'r of Nye
v.
Estate of
Manwell.

*Wm. Weston and D. A. Smalley,* for plaintiff.

I. The lease, offered in evidence by the plaintiff, was properly admitted by the court below. It was signed by the parties, witnessed, acknowledged and recorded in the town clerk's office, agreeably to the statute provisions. The *parties* to the lease would have been bound by it if it had not been recorded.

The copy of a different lease, of the same date, offered by the defendant had no tendency to disprove the lease offered by the plaintiff;—much less did it furnish a pretext for excluding the latter from the jury.

II. The charge of the court was clearly correct.

The defendant's intestate covenanted, in effect, to pay the rent of the farm in one sixth part of the produce raised upon it. The harvesting of the crops and putting them into the barns and store-houses was not a payment of the rent.

A contract to deliver one sixth part of the crops implies that there must be a severance, before there can be a payment.

If the plaintiff's intestate neglected to demand payment, as the rents from time to time became due, and the defendant's intestate desired to discharge himself from his liabilities upon his covenant, he should have set apart the widow's portion. He would then have become bailee of the widow. Instead of doing this, he used the whole produce of the farm himself.

A contract to pay or deliver specific articles, at a stated time and place, must be discharged by setting apart, or tendering the articles at the time and place specified. A mere readiness or willingness to do so is insufficient. *Barney* v. *Bliss, et al,* 1 Chip. R. 399. *McConnell* v. *Hall,* Brayton, 227.

III. The motion in arrest is founded upon a supposed defect in assigning the breaches of the covenant to pay rent.

We contend that the assignment substantially negatives the words or effect of the covenant, and this is sufficient. 1 Ch. Pl. 326.

But if the assignment is defective, the defendant should have demurred specially. Instead of doing so he has pleaded a performance of the covenants, and issue was joined upon that plea.

It is evident, from the case, that the jury, under the charge of the court, from proper evidence, found that the defendant's intestate had not kept his covenants and that the rent sued for had not been paid ;—Hence, the defect, if any existed, was cured by the verdict. 1 Ch. Pl. 403, and cases cited in note 4. 4 Mod. 188. 1 Saund. R. 228, a. note 1. *Ward* v. *Harris,* 2 B. & P. 265. *Bemis* v. *Faxon,* 4 Mass. 263. *Thomas* v. *Roosa,* 7 Johns. R. 461 & note. *Bliss & Arnold* v. *Legget et al.,* 8 Vt. R. 252.

CHITTENDEN,
January,
1842.

Adm'r of Nye
v.
Estate of
Manwell.

The opinion of the court was delivered by

REDFIELD, J.—It is true that a deed of land, to be admitted as evidence, even in a suit between the parties, if proved only by the acknowledgment of the grantor, must be first recorded. But when the clerk of the proper office has duly certified, upon the deed, that it has been properly recorded, we do not think the effect of the evidence can be defeated by showing a mistake in the record, certainly not, where that mistake does not affect the interest of the person, against whom the evidence is offered.

We think that, by the terms of the contract, the defendant did assume the obligation of severing the plaintiff's portion of the products of the farm. This depends upon the terms of the contract. In the ordinary case of letting a farm for a share of the crops, both parties may be equally bound to make the severance ; but where, as in the present case, the lessee undertakes to " deliver" the lessor's portion in specified places, he is bound to the same extent he would be in ordinary cases of contracts payable in similar commodities. And not having done all that his contract required him to do, at the proper time and place, he is now liable for that default. The case is not in principle any different from that of *Brainard & Newton* v. *Burton et al,* 5 Vt. R. 97. It was there held that the lessor had no interest in the crops, until " *after delivery.*" And it is obvious here, that the defendant did bind himself to the delivery, and until that he had not performed his contract. To *deliver* to the plaintiff *one sixth part* of the crops, means something more than to deposit the *whole* crop in the specified place. The plaintiff's portion must be secured. For it does not appear that the plaintiff had any control over the land, or any property in the crops, until

CHITTENDEN,
January,
1842.

Adm'r of
Nye
*v.*
Estate of
Manwell.

they were raised, and her portion "delivered." She had no interest whatever in two thirds of the land upon which the crop was to be raised. It was a letting of the land and the rent to be paid in this particular manner. Such are the very terms of the contract.

The motion in arrest of judgment was correctly overruled. It seems, from the argument at the bar, to have gone mainly upon the ground that there was no sufficient breach of the contract alleged in the declaration. But we think the allegation that the nine years rent, declared for, was due at the commencement of the action, shows a sufficient breach of the contract, at least after verdict. The term *due* in its usual acceptation signifies, not only that the time of payment has expired, but that the debt is unpaid. And if the term were equivocal, even, it should, after verdict, be understood in that sense which will sustain the verdict, rather than the other, if it will as well comport with the context and circumstances of the case, which will not be denied in the present case. We have not been able to see that the breach alleged, according to this construction of the terms used, is broader than the contract, as set forth in the declaration. The one is, we think, co-extensive with the other. The declaration, all along, goes for the whole rent accruing from the date of the contract until the death of the defendant's intestate, which is about nine years, and the breach alleged is that on the first day of March, 1838, there was due to the plaintiffs the rent accruing from the 25th April 1828 to the 1st day of March 1837. In a former part of the declaration it is alleged that defendant deceased on the second day of March 1837.

Judgment affirmed.