##### FOR THE

#### COUNTY OF RUTLAND.

##### FEBRUARY TERM, 1849.

---

PRESENT.

Hon. ISAAC F. REDFIELD,
Hon. MILO L. BENNETT,
Hon. HILAND HALL, } ASSISTANT JUDGES.
Hon. LUKE P. POLAND,

---

### EDWARD H. AIKEN AND DANIEL AIKEN *v.* MILO W. SMITH.

The defendant entered into a contract with A. in writing, not under seal, by which he agreed " to let " to A. a certain farm, to commence on the first of April, 1842, and continue from year to year for the term of five years or so long as the parties should agree and be satisfied, reserving to either party the right to terminate the contract by giving one month's notice in writing,—the produce of the farm " to be equally divided by weight, or measure, between the parties;"—*Held,* that although this gave to A. *an interest in the land,* and a right to occupy it without molestation from the defendant, while he continued in the performance of the contract, yet that it did not constitute a lease of the farm, but that A. was a *quasi* tenant at will, while the contract continued in force, and that the defendant and A. were tenants in common of the growing crops, and of the produce of the farm before severance.

Aiken et al. *v.* Smith.

*Held*, also, that the interest of A. in the growing crops, before severance, was assignable, and that the plaintiff, having received from A. a legal assignment of his interest, became tenant in common with the defendant, in place of A., and might sustain an action of account against the defendant, to recover his just proportion.

*Held*, also, that the right of the plaintiff to sustain such action was not affected by the fact, that the defendant, subsequent to the assignment from A. to the plaintiff, had caused an undivided half of the produce of the farm to be attached and sold upon execution as the property of A., and had himself become the purchaser at the sheriff's sale.

The case of *Hurd* v *Darling et al.*, 14 Vt. 214, 16 Vt. 377, examined, and the correctness of the decision questioned, by BENNETT, J.

Evidence, in an action of account, that the plaintiff, being tenant in common with the defendant of personal property, of which the defendant had obtained the possession, told the defendant to return the property, or pay for it, or he would sue him, and that the defendant denied, that the plaintiff had any right to the property, was held sufficient to sustain the issue, upon the part of the plaintiff, upon a plea, alleging the want of a special demand upon the plaintiff to render his account, before action brought.

The auditor, in an action of account, has no authority to audit the book accounts of the parties; and if the parties present their book accounts before him, it will be considered, so far, a submission to his decision as an arbitrator, and any decision, which he may make thereon, will be held final.

ACCOUNT, in several counts, charging the defendant as bailiff, and bailiff and receiver, for the common benefit of the plaintiffs and defendant, of a quantity of oats, corn, hay, peas and wheat, in which it was alleged the plaintiffs and defendant had an equal interest, as tenants in common. The defendant pleaded, that the plaintiffs did not, previous to the commencement of the suit, demand of the defendant, that he render his account for the time during which he was alleged to have been bailiff of the common property,—and that he was never bailiff, as alleged,—and that the plaintiffs and defendant were never tenants in common of the property described in the declaration,—and that the defendant was never bailiff and receiver, as alleged; and the defendant gave notice, that he should prove, that he attached the property, as belonging to one Austin, by virtue of a writ of attachment in his favor against Austin, and caused it to

be sold upon the execution obtained thereon. Trial by the court,—
Williams, Ch. J., presiding.

On trial it appeared, that the property described in the plaintiffs'
declaration consisted of the crops raised upon the farm of the de-
fendant in the year 1843 by Ashley Austin, under an agreement in
writing between the defendant and Austin, not under seal, which
was in these words:—

"Articles of agreement made this twelfth day of March, 1842,
'between M. W. Smith, of the one part, and Ashley Austin, of the
'other part, witnesseth,—That said Smith agrees to let to said Aus-
'tin his farm lying north of the village of Benson, called the Chapin
'lot, as follows, viz., to commence on the first of April, 1842, and
'continue from year to year for the space of five years from that
'date, or so long as the parties shall agree and be satisfied, and one
'month written notice shall be given, in case either party shall wish
'to put an end to this contract. Said Austin takes said farm after
'the usual custom of farmers, that is to say, the produce of said
'farm is to be equally divided by weight or measure between the
'parties; said Austin is to cultivate said farm in a judicious, hus-
'bandlike manner, and harvest all crops in due season. It is far-
'ther agreed, that said Smith shall pay said Austin for all new per-
'manent fence, that said Austin shall build on said farm with said
'Smith's assent, and such fences as now stand on said lot said Austin
'shall put and keep in as good repair, as when taken; that what work
'the said Austin shall do for said Smith between the first of April
'and first of October, in building fences, &c., shall be at the rate
'of $16 per month, except in the season of haying, said Austin
'boarding himself; said Smith may turn in the work of other
'hands, as he shall choose, as well as team work. Said Austin
'shall enclose and reduce to cultivation, the present season, not less
'than six acres of the best of the land on the west side of the high-
'way for enclosing, which said Smith will furnish materials and pay
'said Austin for his labor, as above. Said Smith puts on said lot
'the Cramton mare, with harness, ploughs, chains, &c., and is to
'have the use of them, when said Austin is not using them. No
'wood is to be cut on the premises, except that said Smith shall cut
'such as shall be in the way of cultivating said farm, and may cut
'other, as he shall see fit. Said Smith also puts on said farm thirty
'sheep, the same that are on the same now, and two yearling steers,
'which are to be kept on said lot at the like rate, except the coming
'season, and the produce of said sheep to be divided annually be-
'tween the parties in the usual way; but said Smith reserves all the
'pasturage for the present season, except for said sheep and steers

Aiken et al. *v.* Smith.

' and one cow and five sheep which said Austin is to have the right
' to keep on said farm at a reasonable rate."*

The plaintiffs claimed the property in question under a quitclaim
deed to them from Austin, duly executed and acknowledged, bear-
ing date July 18, 1843, purporting to convey to them all the right,
title, &c., which Austin then had, or might have, to the hay, and
crops of wheat, oats, corn, potatoes, peas and other crops then
standing and growing on the farm in question. This deed was in-
dorsed by the defendant, as town clerk of Benson, as having been
received for record and recorded July 19, 1843. The plaintiffs in-
troduced a witness, who testified, that he heard a conversation be-
tween one of the plaintiffs and the defendant, in reference to the
crops, in which the plaintiff told the defendant, that if he did not
return the property, or pay for it, he should sue him, and the de-
fendant replied, that the plaintiffs had no claim to it ;—and this was
the only evidence of a demand being made previous to the com-
mencement of this suit.

The defendant took the property by virtue of a writ of attach-
ment in his favor against Austin, regularly served on the 25th of
September, 1843, and caused an undivided half of the property to
be duly sold, at sheriff's sale, upon the execution obtained by him
in the suit, and became himself the purchaser thereof. At the time
of the attachment Austin was still upon the farm, under his contract
with the defendant, taking care of and securing the said crops,
which had never been removed, or divided, and he forbade the de-
fendant's taking his part thereof.

Upon these facts the county court rendered judgment, that the
defendant account, and appointed an auditor. Exceptions by de-
fendant.

The auditor reported, at a subsequent term, that he found the de-
fendant in arrear to the plaintiffs, for the time during which he was
the bailiff of the plaintiffs, as alleged in the declaration, to the
amount of $36,35.

The auditor also reported, that the parties presented before him

---

* To the copy of this contract furnished to the reporter there was appended a
copy of a notice from Smith to Austin, dated July 19, 1843, that the contract was
to be considered as ended in one month from that date; but it did not appear from
the bill of exceptions, that this notice was ever delivered to Austin.

their respective book accounts, upon which he found a balance due to the defendant of $29,97, which, deducted from the amount found due to the plaintiffs, as above mentioned, left a balance of $6,38, which the auditor found was the amount for which the defendant was in arrear to the plaintiffs.

The defendant, in presenting his book account, claimed to recover for seven and a half tons of hay; in reference to which the auditor reported, that the defendant contracted to keep one hundred sheep for the plaintiffs, on hay, at one and a half cents each per week; that, immediately after the plaintiffs commenced feeding the hay to the sheep, the defendant discovered, that he had made a mistake in his computation, and that it would require three cents a week for each sheep, instead of one cent and a half, to yield him the amount which he supposed he was to receive for a given time; that he forth-with gave the plaintiffs notice of this, and told them, that he could not keep the sheep at the price agreed upon, and that if the sheep remained there, he must be paid for the hay they consumed; that there had been no specific time agreed upon for keeping the sheep, except that the plaintiffs wished to dispose of them, and were ex-pected to take them away, when they found an opportunity to do so; and that the sheep were fed from the defendant's hay, until they had consumed seven tons, worth from $4,00 to $4,50 per ton. The plaintiffs insisted, that the defendant should be allowed but one cent and a half per week for each sheep; and the defendant insisted, that he was entitled to recover the value of all the hay consumed; but the auditor decided, that if the plaintiffs continued to keep the sheep upon the defendant's hay, under these circumstances, they were bound to allow him what he supposed the contract amounted to, when he made it; and he allowed the defendant three cents per week for each sheep, amounting to $18,00 for this item.

The county court, April Term, 1846,—WILLIAMS, Ch. J., pre-siding,—accepted the report of the auditor, and rendered judgment thereon for the plaintiffs, for the sum of $6,38, reported to be the balance due to them. Exceptions by both parties.

*Briggs & Williams* for defendant.

1. The defendant insists, that the plaintiffs were not entitled to the judgment to account. The relation of tenants in common did

Aiken et al. *v.* Smith.

not exist between the parties, nor was the defendant in any way the bailiff of the plaintiffs. The only relation, which existed between the defendant and Austin, under whom the plaintiffs claim, was that of lessor and lessee, by virtue of an unexpired lease of five years' duration. When a farm has been let for a single crop, the parties have sometimes been treated as tenants in common; but never, when the letting was for a longer period. The cases in 1 Vt. 87, 3 Johns. 216, and Cro. Eliz. 143, were all lettings for a single crop only; and this circumstance is mentioned and relied upon in each of them. That this was a lease, and the parties not tenants in common, is fully decided by the case of *Stewart* v. *Doughty*, 9 Johns. 108,—which is precisely analogous to this, so far as the lease and the respective interests of the parties therein are concerned. The lease in the case of *Hurd* v. *Darling et al.*, 14 Vt. 214 and 16 Vt. 377, was substantially the same with this; and it was there held, that, previous to a division of the crops, the lessor was not a tenant in common of them, and had no interest whatever in them. Applying that rule to this case, the defendant had no interest in the crops; he took them as the property of Austin. If Austin's interest had been sufficiently transferred to the plaintiffs, the act of the defendant was a tort,—for which an action of account will not lie. *Brins-maid, Adm'r,* v. *Mayo,* 9 Vt. 34. 1 Sw. Dig. 581.

2. If the defendant were liable to account with the plaintiffs, there was no sufficient demand made, previous to the commencement of this suit. *Chadwick et al.* v. *Divol,* 12 Vt. 499.

3. The auditor should have allowed to the defendant the full value of the hay consumed by the plaintiffs' sheep. The contract between the parties was rescinded.

*L. C. Kellogg* for plaintiffs.

1. There was a joint interest, or tenancy in common, in the crops, between the plaintiffs and defendant, resulting from the agreement between the defendant and Austin and the deed from Austin to the plaintiffs. The farm was let by the defendant to Austin on shares; Austin was to contribute his labor, and the defendant was to furnish the use of the land and a horse for team work, with the implements and conveniences of husbandry, for their *joint* interest and profit. 1 Sw. Dig. 91. *Foote* v. *Colvin,* 3 Johns. 222. *Bradish* v.

23

Aiken et al. *v.* Smith.

*Schenck,* 8 Johns. 151. *De Mott* v. *Hagerman,* 8 Cow. 220. *Caswell* v. *Districh,* 15 Wend. 379. *Putnam* v. *Wise,* 1 Hill 234. *Walker* v. *Fitts,* 24 Pick. 191. *Albee* v. *Fairbanks,* 10 Vt. 314. These authorities merely affirm the rule of the common law. *Hare* v. *Celey,* Cro. Eliz. 143; *S. C.,* reported as *Hare and Okelie's Case,* 1 Leon. 315. The case of *Welch* v. *Hall,* to the contrary, cited from the Salkeld MSS. in Bul. N. P. 85, "has long been disregarded and probably never was law"; *per* Cowen, J., in *Putnam* v. *Wise,* and Morton, J., in *Walker* v. *Fitts, ub. sup.*

This case is distinguishable from the cases of *Adm'r of Nye* v. *Estate of Manwell,* 14 Vt. 14, and *Hurd* v. *Darling et al.,* 14 Vt. 214, 16 Vt. 377. In each of those cases there was a provision in the contract, that the lessee should "deliver" the lessor's portion of the crops; and it was held, that the lessor had no property in the crops, until the contract had been fulfilled by the delivery. But in this case there was no such provision, and no act by Austin was necessary, in order to vest the property in the crops in the defendant.

Growing crops are chattels and assignable; *Whipple* v. *Foot,* 2 Johns. 418; *Carter* v. *Jarvis,* 9 Johns. 143; *Walker* v. *Fitts, ub. sup.; Poole's Case,* 1 Salk. 368; *Poulter* v. *Killenbeck,* 1 B. & P. 397; and the whole interest of Austin in the crops, while they were still standing and growing, was assigned to the plaintiffs by deed. This deed was placed upon record; and the defendant had notice of its contents at the time it was made. Nothing more could have been done on the part of the plaintiffs, to perfect their title. *Weeks* v. *Wead,* 2 Aik. 69. 1 Sw. Dig. 267, 272.

2. The plea, that no demand for an account was made, before the commencement of the suit, is believed to be anomalous, *as a plea in bar;* but, upon the facts stated, the issue was properly found for the plaintiffs.

3. The sum allowed by the auditor for the hay fed to the plaintiffs' sheep should be reduced to the contract price; for a contract is not void, because one of the parties labored under a mistake in making it. *Blackmer* v. *Wright,* 12 Vt. 377.

The opinion of the court was delivered by

Bennett, J. This is an action of account at common law, and the important inquiry is, were these parties tenants in common of

the growing crops upon the farm let by Smith to Austin, until a severance had been effected? The operative part of the contract is, that Smith agrees to let to Austin the farm, commencing the first of April, 1842, and to continue from year to year for the space of five years, or so long as the parties shall agree and be satisfied, after the usual custom of farmers, that is, "the produce to be equally divided between them, in weight and measure." In Buller's N. P., p. 85, a manuscript case of *Welch v. Hall* is cited to sustain the position, that, if a person agree to plow and sow the ground of another and give the owner of the soil one half of the crops, the latter receives the same by way of rent, and has no interest in the growing crops, until there shall have been a division. Although this case is cited by Judge Buller as correct law, yet we think, if such a case was decided, it cannot be sustained. It purports to have been but a *nisi prius* case; and it is directly opposed to the case of *Hare et al. v. Celey*, Cro. Eliz. 143, in which it was held, that the owner of the soil and the occupier were tenants in common of the growing crops, I am not aware, that that case has been questioned in England, and much less overruled.

In this state, in the case of *Smith v. Doty*, 1 Vt. 37, it was held, that an agreement between the owner of land and the occupier, that the latter should raise a single crop upon shares, did not amount to a lease of the land, and that the parties had a joint interest in the crop, before a severance. In New York and Massachusetts a similar principle has been very fully adopted. *Foot et al v. Colvin*, 3 Johns. 216. *Bradish v. Schenck*, 8 Johns. 151. *Caswell v. Dis- trich*, 15 Wend. 379. *Putnam v. Wise*, 1 Hill 234. *Walker v. Fitts*, 24 Pick. 193. Judge Swift, also, in his Digest, treats the owner of the soil and the occupier as having a joint interest in the crops. 1 Swift's Dig. 91, 92.

The question then arises, is this contract between Smith and Austin such an one, as to constitute a lease of the land, so as to vest the whole interest in the growing crops in Austin? It doubtless gave him an interest in the land. He was not to occupy as the mere servant of the owner; neither did he occupy upon hire, and to receive a given portion of the crops as a compensation. He had something more than a mere license to enter and cultivate the soil. He had a right to occupy; and the owner could not exclude him,

while in the performance of his contract; but it may be difficult to define the precise nature and character of his interest. It is, however, we think, quite apparent, that it was not the intention of the parties, that this contract should constitute a lease of the land. It is not styled a lease, nor executed as such; but is simply called an agreement. There are no technical words in it appropriate to a lease, unless it be the words " *agrees to let.*" There are no words reserving any portion of the produce as rent,—but simply that he (Austin) is to take the farm after the usual custom, and the produce to be equally divided between the parties. The construction is to be on the whole instrument; and although the contract might contain apt words to make a lease, yet they might be overcome by a contrary intent appearing upon its face. *Putnam* v. *Wise,* 1 Hill 246. No obligation rests upon Austin to pay any certain quantity of produce; and the right of Smith to demand any is contingent, and dependent upon what may be raised, be the same more or less. We think the parties could have only contemplated a common interest in the crops.

I am aware, that in most of the cases, where it has been held, that there was a common interest in the crops, before a severance, the letting has been for a single crop; and it has been sometimes supposed, that if the letting were for more than a single crop, a different result would follow. In the case of *Putnam* v. *Wise,* Judge Cowen remarks, that it is difficult to see, why the same form of contract would not continue the relation of tenants in common for the whole time, although the letting be for two or more years. In *Rich* v. *Penfield,* 1 Wend. 380, Judge Sutherland was inclined to treat the owner and occupant of a mill, which had been run several years upon shares, as tenants in common. If the intention of the parties be doubtful, the shortness of the time might be resorted to, as furnishing some evidence, that the parties intended to hold the crops in common; but how the circumstance, that the letting was for more than for a single crop, can overcome or control a relation, manifestly created by the contract of the parties, is more than I can understand. In *Walker* v. *Fitts,* 24 Pick. 193, the defendant was to manage and carry on the farm for one season. In *Caswell* v. *Districh,* 15 Wend. 379, the letting was for one year. In *Putnam* v. *Wise,* 1 Hill 234, the letting was for one year; and if the occupant

performed his agreement in a manner satisfactory to the other party, then for another year, upon the same terms; and in that case the agreement was under seal and contained the technical words, " *lease and to farm let*," and also a covenant to " *yield, pay,* and give unto the lessor, one half of all the grain," &c.   In all those cases it was held, that the owners of the soil and the occupants had a common interest in the crops, before severance.   In the case be= fore us Austin was to occupy from year to year for five years, *or so long as the parties should agree and be satisfied.*   By the terms of this contract either party had a right, at any time, to put an end to it, upon giving one month's notice.   The rights of Austin under this contract are not those of an occupant for a certain term, or even for a single crop, or one year.   Indeed, he is only a *quasi* oc‑ cupant at will, so long as the parties shall agree and be satisfied, not exceeding five years.

The case of *Stewart v. Doughty,* 9 Johns. 108, has been pressed upon the court, by the defendant's counsel, as decisive of the case at bar.   But that case is clearly distinguishable from this.   The lease contained the clearest words of a present demise.   The lessee covenanted to *render, yield* and *pay* to the lessor a given proportion of the produce of the farm ; and the lease declared, that the lessor had *rented* and *hired* the farm, and that he had given the lessee the *quiet and uninterrupted* possession of the same, and that he was to be suffered to possess and enjoy it.   The court, it is true, held in that case, that what was to be rendered by the tenant was a payment of *rent* in kind, and that the tenant was a lessee of the premises.   This case, however, must be considerably shaken, if not in effect overruled, in New York, by the recent case of *Putnam* v. *Wise,* 1 Hill 234.   In our own Reports, the case of the *Adm'r of Nye* v. *Manwell,* 14 Vt. 14, is much like the case of *Stewart v. Doughty,* The lease contained all the words of a *present demise,* and an ex‑ press covenant, on the part of the lessee, to deliver to the lessor his proportion of the produce.

The case of *Hurd* v. *Darling et al,,* 16 Vt. 377, has a more direct bearing upon the case at bar.   In the report of the case in the 16th Vt., the agreement of the parties is not set out with particularity; but in the report of the case in the 14th Vt. 214, be‑ tween the same parties, it is set out in full.   Although this court

held in that case, that the contract was a lease of the land, and that the whole interest in the crops was in the lessee, until a severance, yet, when we look to all the provisions of the contract, and see that Hurd was to stock the farm with cows, with a yoke of young oxen, and a span of horses, and was to furnish a portion of the farming utensils, and a moiety of those necessary. for the dairy, and one half of the seed grain, and that each was to pay one half of the taxes, except the highway tax, and that the stock was to be fed from the mass of the produce of the farm, before there should be any severance, and the increase and profits of the stock to be divided equally between the parties, it may well be questioned, whether it would not have been more in accordance with the intention of the parties, to have held in that case, that it was but the ordinary letting of the farm upon shares, and that the parties had a common interest in its productions, before a severance.    It is not inconsistent with such a position, that Darling should have taken upon himself the labor of a severance of the produce, and a delivery of one moiety to Hurd, up= on the farm ; and it appears to. me, that such a provision should not have a controlling influence upon the character of the contract.   In this particular, however, the case is distinguishable from the one before us; and, at all events, we think it should not control it.

If, then, the original parties to this contract would have been tenants in common of the produce of the farm before severance, the question arises, how do the parties to this suit stand ?   Austin, on the eighteenth of July, 1843, conveyed, by quitclaim deed, all his interest in the hay and other crops, standing and growing upon the farm, to the present plaintiffs.   This was duly acknowledged, and was recorded on the same day by the defendant, who was then town clerk.   The position, that growing crops are a chattel interest and assignable, is supported by abundant authority ; and, indeed, it has not been questioned.   Nothing farther was necessary to be done by the plaintiffs, to complete their title.   All the possession of the crops had been taken, of which the nature of the property would admit; and this is all, that can be required, even against creditors.   As Austin, then, became a tenant in common with the defendant, by the terms of the contract ; his assignees stand in his place, and must also be tenants in common with the defendant, by force of the assignment ; and the action of account was an appropriate remedy,

---

Aiken et al. *v.* Smith.

---

It has been urged in argument, that, though this should be so, yet the effect of the attachment of the property by the defendant, as the property of Austin, and the subsequent sale of a moiety upon the execution, would be, to dissolve such tenancy in common; but it can have no such effect. An obvious reason is, that, the assignment to the plaintiffs being prior to the attachment, Austin at that time had no attachable interest in the crops, and the sale would in no way affect the right of these plaintiffs to them.

Under the issue, upon the plea alleging the want of a special demand upon the defendant to render his account, before action brought, the only question is, was there any evidence tending to prove the plea? The evidence was, that the plaintiffs told Smith, that, if he did not return the property, or *pay for it*, they should sue him. Although this is a demand upon Smith to account for the whole property, and not strictly to account, as a tenant in common, with the plaintiffs, yet we think it was sufficient, upon the principle, that the greater comprehends the less,—and especially in a case like this, where the defendant denied *all right* whatever in the plaintiffs to .the property.

We come, then, to the conclusion, that there was no error in the county court, in finding the issues for the plaintiffs on the special pleas in bar, and in rendering judgment to account.

Upon the coming in of the auditor's report both parties excepted to his decision upon the single item of the defendant's book account, for the keeping of the plaintiffs' sheep at hay; and each has excepted to the decision of the county court, in relation to that one item. The auditor, it being a common law action of account, had no authority, under the rule, to audit the book accounts of the parties, either on the one side, or the other. But it does not appear, that any objection was made before the auditor to this course of proceeding; and the mutual accounts of the parties were brought in and adjusted. No objection was taken on this ground in the county court, and none has been taken in the argument in this court. We must then consider, that the auditor, in going beyond the authority delegated to him under the rule, and taking upon himself the adjustment of the proper book accounts of these parties, acted by their express consent, and in the capacity of arbitrator, or referee; and that both parties should and must be satisfied with the proceed-

ings of the auditor in that part of the case. There may be considerable difficulty in sustaining the decision of the auditor, in relation to that item, upon strict legal ground; but it does not appear, that he intended to put it upon such ground. All that he says is, that, under the circumstances, (having detailed them,) he decided, that the plantiffs were bound to allow the defendant what he supposed the contract price of keeping the sheep amounted to, that is, three cents for each sheep per week. He might have supposed chancery would have relived the defendant from the effects of his mistake in making the contract, and that it was not equitable, that the defendant should have more than what he supposed he was to have by the contract, when he made it; although, when he found out his mistake, he gave the plaintiffs notice, that, if they continued to feed his hay to their sheep, they must pay him what the hay was reasonably worth.

The result, then, is, the judgment of the county court is affirmed.