## D. P. WALWORTH v. GEO. W. JENNESS.

### Trover. Tenant. Growing ·Crops.

A tenant, having by virtue of a written agreement a right "to occupy, cultivate, and carry on" land *at the halves* for a specified number of years, has such an interest in the land that he can convey to a third party, by writing under seal and recorded, without a change of possession, such title to the crops to be grown in the future that they cannot be held on attachment by the tenant's creditors.

TROVER. Plea, the general issue and notice that the goods and chattels claimed to have been converted were taken on a writ of attachment and execution in favor of one William Twombly and against one Eben A. Grant.

Trial by court, February Term, 1885, Ross, J., presiding. Judgment for the plaintiff. The case was heard on an agreed statement. On November 8, 1873, the firm, Twombly, Grandy & Skinner, entered into the following agreement with one Grant: Said Grant covenanted to clear and carry on a certain lot of land owned by said company. The land was to " be planted with such seed as may be agreed upon between the parties except the piece already cleared, at the date of this agreement, in the southwest corner of said lot, which shall be plowed and cultivated and planted for the first two years with potatoes, after which it shall be planted with such seed as may be agreed upon between the parties; said land to be carried on until a date including two (2) seasons after the last piece shall be cleared," * * * " and it is further understood and agreed between the parties that each party is to furnish one half (½) of the seed used in planting said land; that the products of said husbandry shall be equally divided between the parties; and that said party of the first part is to deliver the share of said products belonging to said party of the second part, each year, unless the same shall be otherwise disposed of, at Barton Landing in good condition and suitable for market."

On March 26, 1875, said Grandy and Skinner conveyed their interest to said Twombly, and on October 14, 1875, Grant and Twombly signed another contract relating to the land, of which the following is a part:

" And the said Grant agrees to cultivate said land as fast as he clears the same in good husbandlike manner at all times, and to fence the same from timber cut therefrom, in a proper and suitable manner for such land, and to give said Twombly one half of all the crops raised therefrom. And the said Grant is to deliver said Twombly's share of said crops to him at the village of Barton Landing aforesaid, etc., etc.; and the said Twombly further agrees that said Grant may occupy and cultivate and carry on the land so cleared by him as aforesaid upon the terms and conditions above written until January 1, A. D. 1879."

The writing from said Grant to the plaintiff was as follows:

"This agreement made this 17th day of April, A. D. 1877, by and between Eben Grant and D. P. Walworth, witnesseth: that I, the said Eben Grant, in consideration of debts, claims, and demands, which said Walworth has against me, and seed grain furnished me by said Walworth, do lease and farm let unto said Walworth the following property, to wit:

"A lot of land known as the Albert Leland lot, situated in Barton," * * * " and being the same premises leased to me by a contract dated November 8, A. D. 1873," * * * "meaning to convey to said Walworth all my interest in said land, as conveyed to me by said contract. All of my share of the crops and products raised on said land to be and remain the property of said Walworth in full title and control. And I, the said Grant, do further agree to carry on and farm said land in a good and husbandlike manner, and to be at all the expense thereof:

"And I, the said Walworth, agree to apply all the avails arising from said crops and products on the before-mentioned debts, claims, and demands I hold against said Grant."

Said contracts were witnessed, sealed, acknowledged, and recorded. Immediately after the making of said contract,

said Grant went into the possession and occupation of said land under said contract, and remained in the possession and occupation of the same until some time after the taking and sale of the potatoes.

Said Walworth has never waived nor released any rights he acquired by virtue of the writing from Grant to him unless he has done so by not exercising any act of ownership or possession over said land or over the potatoes, except such as he may have exercised by receiving and recording said instrument in writing. The potatoes were grown on the land in the season of 1877, and were raised by said Grant and were taken by defendant as constable on a justice's execution in favor of said Twombly against said Grant.

*Grout & Miles,* for the defendant.

No title passed to the plaintiff of the future crops. 10 Exch. 292; 5 El. & Bl. 830; 3 H. & N. 964; 17 C. B. 462; 15 M. & W. 110; 2 Exch. 542; 7 Q. B. 850; 5 Mass. 522; 2 Cush. 50; Id. 303; 10 Met. 481; 13 Met. 17; 58 Ga. 574; 55 Ga. 543; 20 Barb. 37; 86 Ill. 591; 7 Wis. 159; 41 N. H. 456; 65 N. Y. 459; 41 Barb. 404; 65 Ala. 256.

*L. H. Thompson,* for the plaintiff.

Grant had an assignable interest in said land and the crops to be grown thereon. His interest therein passed to plaintiff by said lease or conveyance.

The record of the conveyance to plaintiff was notice to defendant of plaintiff's title to the potatoes, if such notice were necessary; but no notice was necessary to protect plaintiff's rights.

A change of possession of said potatoes, when grown, was not necessary to protect plaintiff's title, as against subsequent attaching creditors. The grant to the plaintiff was an interest in real estate, and the title to the crops vested in the plaintiff while they were a part of or an incident to the

realty. *Bellows* v. *Wells*, 36 Vt. 600; *Fitch* v. *Burk*, 38 Vt. 683, 689, 690; *Leavitt* v. *Jones*, 54 Vt. 425, 526; *Hull* v. *Hull*, 48 N. H.; Jones Chat. Mort. s. 140; 2 Add. Con. (Morgan's ed.) s. 657; *Petch* v. *Tutin*, 15 M. & W. 113, 116.

The opinion of the court was delivered by

ROWELL, J. The determinative question in this case is, whether Grant had an interest in the land on which these potatoes grew.

It was early held in England that "exposing to halves" for a single crop is no lease. *Hare* v. *Celey*, Cro. Eliz. 143. And such has always been the general rule in this State. And the same form of contract for a longer term is undoubtedly the same.

But it will be found that the cases on this subject turn on the construction given to the particular contract of letting involved; and they may conveniently be divided into three classes, namely (1), those in which the contract is held to make the owner and the occupant tenants in common of the crop, but to give the occupant no interest in the land itself; (2), those in which the contract is held to be a lease, and so to vest the entire interest in the crop in the occupant; and (3) and intermediate, those in which the contract is held to make the parties tenants in common of the crop *and* to give the occupant an interest in the land itself.

When the contract is the ordinary one of letting upon shares, the case falls under the first class, as shown by *Bishop* v. *Doty*, 1 Vt. 37, and *Warner* v. *Hoisington*, 42 Vt. 94.

Such a contract is regarded as rather in the nature of a contract to perform labor upon land, and not as giving the occupant any interest in the land, nor even the possession of it in law, but only a right to enter upon it for the purpose of carrying out his contract.

When the contract contains apt words to constitute a lease, and they are not overcome by a contrary intent appearing on its face, or when the instrument otherwise

evinces an intent of the parties to make a lease, the case falls under the second class, as shown by *Hurd* v. *Darling*, 16 Vt. 377. *See* the contract as set out in the report of the case in 14 Vt. 214.

When the contract falls short of a real lease, but yet is something more than the ordinary letting on shares in that it betrays an intent to confer on the occupant an interest in the land itself, the case falls under the third and intermediate class, as shown by *Aiken* v. *Smith*, 21 Vt. 172.

In that case the owner of a farm agreed by a contract, not under seal, to let it to another at the halves from year to year for the space of five years from a time certain, or as long as the parties could agree and were satisfied, either having the right to terminate the contract on a month's notice.   This contract was construed not to be a lease, so as to vest the entire interest in the crops in the occupant, but to constitute the parties thereto tenants in common of the crops, *and* to give the occupant an interest in the land itself; for it was said that he was not to occupy as the mere servant of the owner, nor upon hire, to receive a portion of the crop as compensation, but had something more than a mere license to enter and cultivate the soil, namely, *a right to occupy*, so that the owner could not exclude him while in the performance of his contract; but the precise nature and character of that interest it was said to be difficult to define.

Though this would seem not to have been the real ground of that decision, yet we adopt as sound what the court said about the legal effect of that contract in this behalf, and think it entirely applicable here.

By the first contract, Grant was to clear and carry on at the halves until a date including two seasons after the last piece was cleared, a certain lot of land; and by the second contract, supplemental to the first, dated March 26, 1875, he had the right to " occupy, cultivate, and carry on " the land on the terms and conditions of the contracts until January

1, 1879. These contracts were both executed with all the formalities of a deed, and recorded in the land records of the town; and at the time in question, Grant was in occupancy under them, clearing and carrying on the land in fulfillment thereof, and—as was said of the contract in *Aiken* v. *Smith*—they made him more than the mere servant of the owner, more than an occupant upon hire, to receive a portion of the crop as compensation, they gave him more than a mere license to enter and clear and cultivate the soil, they gave him a right to *occupy* as long as he fulfilled on his part and until the end of the term, and the owner could not lawfully exclude him from such occupancy; and this gave him an interest in the land itself, the exact nature and character of which it is not necessary to define.

Having then an interest in the land itself, he could convey to plaintiff as he did by an instrument executed with all the formalities of a deed and duly recorded, his share of the crops and products to be raised thereon though then unplanted; "for land is the mother and root of all fruits, and he who hath it may grant all fruits that may arise upon it after, and the property shall pass as soon as the fruits are extant." Lord HOBART in *Grantham* v. *Hawley*, Hob. 132; *Bellows* v. *Wells*, 36 Vt. 599; and cases *passim*. And in such case there need be no change of possession in order to protect the fruits from the grantor's creditors, for they were never his property. *Bellows* v. *Wells*, 36 Vt. 599; *Fitch* v. *Buck*, 38 Vt. 683.

Judgment affirmed.