RICH & LINCOLN *ads.* PENFIELD.

Where mills are worked on *shares*, the owner and the occupant may be considered *quasi* tenants in common of the mill as well as the profits; and for an injury sustained from the withholding water from the mills, an action on the case may, and probably ought to be brought in the joint names of the owner and occupant; but when the action is brought in the name of the owner alone, the nonjoinder of the occupant can be taken advantage of only by plea in abatement.

The only advantage which can be taken of the non-joinder upon the trial, is by way of apportionment of the damages, it not being a ground of nonsuit.

THIS was an action on the case, brought by Penfield against Rich and Lincoln, for diverting or withholding the waters of *Irondequoit* creek from the mills of the plaintiff, situate on that creek, below the mills of the defendant, tried at the Monroe circuit in September, 1827, before the Hon. JOHN BIRDSALL, one of the circuit judges.

The declaration averred, that on the 1st September, 1820, and from thence until the 1st August, 1826, the plaintiff was *lawfully possessed* of certain mills and manufacturing establishments, to wit, a grist or flouring mill, a saw-mill, an oil-mill, a tannery, a fulling-mill, carding machines, and turning shop, near to the Irondequoit creek, and of right was entitled to the use, benefit and advantage of a just, convenient and reasonable proportion of the water of the creek, for the working of his mills and machinery, and had and enjoyed the same until the 1st September, 1820, when the defendants erected certain weirs or dams over and across the creek, near to and above the dams, embankments, and other erections of the plaintiff, and continued the same until the 1st August, 1826, and thereby sometimes obstructed the water of the creek from flowing in due, usual and proper quantities for the supply of the mills and machinery of the plaintiff; and at other times let out the water in large, unusual and destructive quantities, and thus prevented the use and enjoyment of the mills, &c. and injured and broke the dams, flooms, waterwheels, and other machinery of the plaintiff. The defendants pleaded the general issue.

Where, however, it appeared that the occupant had exclusive possession of the mills for a portion of the time laid in the declaration, on an agreement reserving an annual rent, it was held the owner was not entitled to recover for such period. If the injury was of such a nature as to entitle him to recover as tenant of the freehold, he should have described his interest accordingly. Such objection is not merely one of variance between the declaration and proof to be taken advantage of on the trial: it is fatal, as it does not support the title laid in the declaration. Though an objection is not specifically taken at the trial, if, on a case made, it appears that a plaintiff ought not to have recovered, on grounds which, if they had been taken, could not have been obviated, the verdict will be set aside.

The testimony is very voluminous. To the understanding of the points decided by the court, it is however only necessary to state, that the plaintiff, in 1817 and '18, who before had a grist-mill on the Irondequot creek, erected an extensive merchants' or flouring mill with four run of stones. About the same time, Rich, one of the defendants, erected a dam on the creek above the plaintiff's mills, of the height of about seven feet, which 3 or 4 years afterwards, he increased to the height of eleven feet. The plaintiff's flouring-mill was usually run day and night. In a dry season, it is interrupted from six to eight hours in the twenty-four for the want of water, occasioned by the gates of Rich's mill being shut down, which are usually shut down in the night time. The water for *one run* of stones at Rich's mill, is sufficient for *the four run* in the plaintiff's mill, from the superior advantages of its location. In the driest time, there is generally water enough to keep one run of stones in operation at Rich's mill *all the time*, and another run *half of the time;* but it was proved to be more profitable, and better accommodated customers, to grind with all the stones at Rich's only in the day time. It appeared in evidence, by the testimony of Samuel T. Gelston, a son-in-law of the plaintiff, that since 1819, he, the witness, occupied the merchant-mill and oil-mill *on shares,* though there was no certain agreement as to the terms of occupancy. About two years since, and previous to the commencement of this suit, the plaintiff and witness *settled,* and turned the use of the mills into *rent.* The witness allowed plaintiff for the flouring mill an average rent of less than $1000 per year, and $150 as annual rent for the oil-mill. Two years ago, witness made an agreement with plaintiff to occupy the flouring mill, at $1000 annual rent and repairs, and continued to occupy the same till the time of trial.

After the testimony was closed, the defendants' counsel insisted that the plaintiff was not entitled to recover for the injury sustained, as it respected the oil-mill and merchants' mill, because the *interest* in those mills was either joint in the plaintiff and Gelston, or in Gelston alone, for the whole period of time alleged in the declaration; or the injury was a

part of the time to the tenants in common, and a part exclu-sively to the tenant of the *term*, and not to the tenant of the *freehold.* The judge decided that the plaintiff was entitled to recover in his own name, without joining Gelston ; or, at all events, that the defendants could not take advantage of the non-joinder of Gelston at the trial ; and he charged the jury, that the plaintiff and the defendants both owning mill-seats upon the same stream, they were bound to be conciliatory in the use of their rights, and to do each other as little injury as possible ; that the plaintiff had proved that he had sustain-ed a very considerable damage in consequence of Rich's dam and his manner of using the water ; that the question for the jury to determine was, whether the defendants had *unreason-ably* withheld the water to the injury of the plaintiff, and if they found that the water had been unreasonably withheld, then the defendants were liable to the plaintiff in damages ; that it appeared from the testimony, that if the defendants had, during the dry season, run one run of stones the whole time, and one run half of the time, the plaintiff would have always been accommodated with a supply of water ; that the defend-ants would thus have done the same quantity of work, as by running their three runs twelve hours and then shutting down twelve hours ; that, in his opinion, a reasonable and equita-ble use of a common right, required the defendants to adopt the course which would accommodate the plaintiff, without any serious injury to themselves, and whether the defendants had unreasonably used their right to the prejudice of the plaintiff, was for the determination of the jury. The jury found for the plaintiff, with $500 damages.

*M. Chapin,* for the defendants, moved for a new trial, prin-cipally on the following grounds: 1. That the plaintiff had not such possession of the mills, or interest in them during the period laid in the declaration, as will enable him to sus-tain this action ; 2. That the judge misdirected the jury ; 3. That the verdict is against law and evidence. (Under the decision of this case, it is deemed unnecessary to note more of the argument of the counsel, than what was advanced on the first point.) The damage alleged, was to the *possession,*

not to the *freehold.* The plaintiff does not sue as reversion-er; had he done so, he must so have averred in his declara-tion. (1 *Chitty's Pl.* 367. 2 *ib.* 336.) He alleges that he was lawfully *possessed.* It cannot be said that the plaintiff was in possession because the mills were worked on *shares,* because when a settlement took place between the plaintiff and Gelston, the relation of landlord and tenant was ac-knowledged, and the use of the mills paid for in *rent.* The averment that the plaintiff was *lawfully possessed* is material, and must be proved, (1 *Chitty,* 366 ;) and the plaintiff, failing in the proof, was not entitled to a verdict. The action on the case for damage done to *the possession,* and not affecting the freehold, is used here instead of trespass, and could be brought by no one who could not maintain trespass where that would be the proper action. That the tenant in possession alone can sue for damage to the possession not injuring the inheritance, see 1 *Com. Dig.* 304, *case for a nuisance, B.* 1 *Chitty,* 142. At all events, plaintiff was not entitled to recover since 1825, when Gelston took a lease of the premises at an annual rent of $1000, and yet the plaintiff has a verdict for the whole time laid in the declaration, up to the 1st August, 1826.

*V. Mathews,* for plaintiff. The plaintiff and Gelston, the witness, were *tenants in common* of the mill until two years be-fore the trial. They had a joint interest in the profits, and any act which tended to lessen or destroy the profits was a joint injury ; and for the purpose of recovering damages for that injury, they may be considered as jointly possessed. The action is for a *tort;* and the defendants, to have availed them-selves of the non-joinder, ought to have plead in abatement : not having done so, the plaintiff is entitled to recover his por-tion of the damages. (1 *Saund.* 291, *n. g. h.* 6 *Johns. R.* 108.) The agreement of the witness, two years before the trial, to turn the profits into a rent of $1000 per year, was but a liquidation of the profits. The plaintiff could not, as reversioner, bring a suit to recover damages for an injury done to him as tenant in common. The judge was not call-ed upon to instruct the jury that the plaintiff was entitled to recover only his part of the damages, and the verdict was not

for one tenth of the damages proved. It is to be presumed, therefore, that the circumstance was taken into consideration by the jury in making up their verdict; and the court will not, therefore, disturb their finding. After the agreement between the witness and the plaintiff, the plaintiff was entitled to sue for the injury to the reversion. Regularly, it ought to have been averred that he sued as reversioner; but this is mere inducement. (2 *Chitty*, 337, *n.*) The defendants could take advantage of this defect only by objecting at the trial, to the proof, as variant from the declaration. This objection was not taken. The objection there, was, that the interest was either in the plaintiff with Gelston, or in Gelston alone; or otherwise, that, the injury was a part of the time to the tenants in common, and a part exclusively to the tenant of the term, and not the tenant of the freehold. No objection, therefore, was taken to the character in which the plaintiff sued. According to the old law, the plaintiff was obliged to state his title in the declaration. By modern decisions, however, it is sufficient to state that he was in possession. If the court should consider this objection fatal, the plaintiff offers to procure the release of Gelston.

*By the Court,* SUTHERLAND, J. It is not denied that Penfield was the owner in fee of the mills which are alleged to have been injured by the unlawful conduct of the defendants; but is contended, that from September, 1819, to August, 1826, the period within which the injury was sustained, as alleged in the declaration, the mills were not in his possession, but in the possession of Gelston, his tenant. Gelston, who is the son-in-law of the plaintiff, was examined as a witness, and his testimony contains all the evidence upon this point. He stated that from 1819 to 1825, he occupied the plaintiff's oil-mill and merchant-mill on shares : that there was no certain agreement as to the terms; but that about two years before this suit, they had a settlement, and turned the use of the mills into rent. That he allowed the plaintiff an average rent of a *little less* than $1000 per annum for the flouring mill, and $150 for the oil-mill. That in 1825, he agreed with plaintiff, to occupy the flouring mill at $1000

annual rent and repairs ; and continued so to occupy it at the time of the trial. From this evidence, it appears that during five of the six years laid in the declaration, the mills were occupied by Gelston on shares; by which I understand that the net profits were to be divided between him and the plaintiff. Upon a settlement between them at the end of five years, they estimated the plaintiff's share of the profits, at about $1000 per annum for the flouring mill, and $150 for the oil-mill. This was merely a summary mode adopted by the parties of adjusting their accounts, instead of the more minute and tedious process of stating the expense and receipt of the establishment, and did not change or affect the nature of Gelston's holding. It was a holding or working of the mills for a share of the profits. During this period, I am inclined to think Penfield and Gelston must be considered as having been tenants in common in the mills, as well as the profits. There was no certain and precise agreement between them. From the relation in which they stood to each other, it is probable that it was an arrangement intended for the benefit of Gelston ; that it was understood that he was to manage the establishment, and the profits should be divided as the parties should subsequently agree. I should not infer from this evidence, that the exclusive possession of the mills was in Gelston. The agreement was not for any specified time ; it was during the will of the parties. For the injury sustained from the withholding the water from the mills during this period, the action might undoubtedly, and probably ought to have been in the joint names of Penfield and Gelston. They had a joint interest, and any act which tended to lesson or destroy the profits of the mills, was a joint injury to both ; and for the purpose of recovering for that injury, they might perhaps be considered as jointly possessed, even if the evidence had been less vague as to Gelston's holding. But the non-joinder of Gelston could be taken advantage of, only by plea in abatement. Where there are several tenants in common, and all do not join in an action of trespass *quare clausum fregit*, the defendant cannot take advantage of it at the trial, but must plead it in abate-

ment, (*Brotherson* v. *Hodges*, 6 *Johns. Rep.* 108;) and this is the general rule in actions for torts. (1 *Saund.* 251, 291, *note g.* 2 *Saund.* 191, *n.* 1, 117 *and* 147, *g.*) The only advantage which can be taken of the non-joinder upon the trial, is by way of apportionment of the damages. It is not a ground of non-suit; and although the fact appears upon the face of the record, it is not a ground of demurrer or of motion in arrest of judgment, or of writ of error. (1 *Chitty's Plead.* 54. 6 *T. R.* 766. 7 *T. R.* 279. 1 *Bos. & Pull.* 75. 2 *Bos. & Pull.* 123. 5 *East*, 407, 420.) In relation to the first five years, therefore, the averment in the declaration that the plaintiff was possessed of the mills, &c. appears to be sufficiently supported by the evidence; and it is now well settled, that in an action of this kind, it is not necessary for the plaintiff to allege any thing more in regard to his title, than that he was possessed of the premises, and that by reason of such possession, he was entitled to the use of the water, of which he has been deprived by the defendants. (1 *Chitty*, 366, 7. 2 *Chitty*, 337.) But the plaintiff has recovered damages, not only for the obstruction of the water by defendants, from 1820 to 1825, but also from 1825 to 1826; and the testimony of Gelston shows, that during that time, he was the exclusive possessor of the flouring mill at a fixed annual rent of $1000. It seems to me impossible, that the plaintiff can recover for that year under this declaration. He was not in fact or in judgment of law the possessor of the mills during that period. He could not have maintained trespass for any unlawful entry into them; he had neither the possession nor a right to the possession. If the injury complained of was of such a nature as to entitle the plaintiff to damages as tenant of the freehold, he should have described his interest accordingly. Where a reversioner sues for an injury to houses, land, &c. in possession of his tenant, he must set forth the character in which he sues, and allege according to the fact, that the lands were held by a third person as tenant to the plaintiff. (1 *Chitty*, 366. 2 *Chitty*, 336.) It seems to be conceded by the counsel for the plaintiff, that this objection would have been fatal, if it had been properly taken at the trial. But he contends that the objection is merely one of variance between the declaration and the proof and

that the proof was not objected to on that ground. The objection is that the evidence does not support the plaintiff's title as laid in the declaration ; and this ground was distinctly taken by the counsel for the defendants, and urged upon the court. The case states, that the defendants' counsel urged, among other things, that the plaintiff could not recover at least for injuries sustained by the oil-mill and merchant-mill, on the ground that the interest was either in the plaintiff with Gelston, or in Gelston alone for the whole period, or because the injury was a part of the time to the tenant in common, and a part exclusively to the tenant of the term, and not the tenant of the freehold. Now the only interest alleged in the declaration, was the possession of the plaintiff, and the only evidence of interest upon the trial, was that which went to the fact of possession ; when the defendants objected, therefore, that the plaintiff could not recover, because the injury proved was for a part of the period exclusively to Gelston, the tenant of the term, it was substantially objecting that the plaintiff's proof varied from his declaration, but it was not necessary to put the objection in that specific form. This is not a bill of exceptions, but a case ; and if it appears that the plaintiff ought not to have recovered on grounds which, if they had been specifically taken at the trial could not have been obviated, the verdict should be set aside. Upon this ground, therefore, I am of opinion, that a new trial should be granted. It becomes unnecessary, therefore, to express any definite opinion upon the merits of the case ; and as it is apparent that any opinion which the court might express, would not terminate the controversy and supersede the necessity of a new trial, it is deemed inexpedient to discuss at large the principles of law which the case presents, or to analize the evidence in order to ascertain whether it supports the verdict.

I shall simply remark, that the charge of the judge appears to me to be substantially in accordance with the principles established by this court in the analogous cases of *Palmer* v. *Mulligan*, (3 *Caines*, 307,) of *Platt* v. *Johnson and Root*, (15 *Johns. R.* 213,) and *Merritt* v. *Brinckerhoff*, (17 *Johns. R.* 306,) and that it is not a case in which the court would in-

terfere with the verdict, as against the weight of evidence. It is not intended, however, to preclude the discussion either of the questions of law or of fact, if the case should again be presented to the court in substantially the same form.

New trial granted.