## SARATOGA COUNTY COURT

### GILBERT WRIGHT agt. JOSEPH MOSHER.

To entitle a party to *summary proceedings, (Laws of* 1849, *ch.* 193,) to remove a tenant from the possession of premises, it must appear that the relation of *landlord* and *tenant* exists.

*Held* in this case, that the agreement entered into, (which is fully set out in the case,) for the occupation and working the farm, dividing the products and sharing the expenses, &c., did not create the relation of landlord and tenant, but made the parties to it *tenants in common,* not only of the products of the farm and the remaining profits, but of the farm also.

But assuming that the agreement was a lease and created the relation of landlord and tenant, and if the reservation of " one-third of all the remaining profits," &c., was to be considered rent reserved, then it would seem to follow that the tenant by continuing in possession, had turned his lease for an uncertain term into a lease from *year* to *year.*

The statute authorizes these proceedings against three classes of tenants, to wit: tenants at will, at sufferance and for years; but does not include those who are strictly tenants from *year* to *year.*

But the statute includes two kinds of tenants *at will,* 1. A strict tenancy at will as at common law. 2. A tenancy *at will from year to year.* The first may be terminated *at any time* that a party wills, by giving one month's notice in writing. The second may be terminated *at the end of any year* that a party wills, by giving one month's notice in writing, *terminating with the year.*

If the relation of landlord and tenant existed in this case between the parties to this proceeding, it was *held,* that the defendant must be considered a tenant at will from year to year, and was entitled to one month's notice to quit, terminating with the year, which was not given. Besides, the notice given was insufficient also, for the reason that it did not fix any day or time, expressly or by any description, for the defendant to quit. Proceedings dismissed.

*Summary Proceedings, April* 19*th,* 1858.

ON the 17th day of February, 1855, Gilbert Wright, senior, the father of the plaintiff, owned and occupied, in the town and county of Saratoga, a farm consisting of one hundred and fifteen acres of land ; and on that day entered into a written agreement with the defendant in the following language:

"It is agreed between Gilbert Wright, of the first part, and

Joseph Mosher of the second part, as follows : the said Gilbert Wright agrees to let his farm where he now lives, to J. Mosher, as follows—to make but one family, live all together off of the products of the farm, the said Gilbert to have one-third of all the remaining profits, and the said Joseph to have two-thirds, the said Gilbert to pay tax on the said farm, the said Joseph to pay the road tax ; each one of the above named persons to pay half for grass seed and plaster, the said Gilbert to keep one horse on the said farm for his own use, the said Joseph to keep teams to work the farm, and all other stock; the said Gilbert to furnish one-third, and the said Joseph two-thirds; and the said Gilbert to give the said Joseph the interest on a certain note which I hold against the said Joseph of seven hundred and fifty-two dollars, as long as the said Joseph shall work the farm; each one to find his proportion of seed to sow and plant the farm. Dated Saratoga, February 17th, 1855.

" GILBERT WRIGHT,

" JOSEPH MOSHER."

The defendant immediately entered upon the premises under this agreement, and still remains there. On the 12th day of March, 1857, Wright, senior, executed under his hand and seal, to the plaintiff, an agreement in writing, to sell and convey the premises to the plaintiff on or before the first day of April, 1858, for $5,500. In pursuance of this agreement, Wright, senior, did on the 26th day of October, 1857, convey the premises to the plaintiff by a warranty deed. The defendant had notice of such agreement and conveyance. On the first day of November, 1857, Wright, sen., died.

On the 11th day of March, 1858, the plaintiff caused a notice in writing to be served on the defendant, requiring him to remove from the premises; but Mosher still continues in possession of the premises, without the permission and against the will of the plaintiff. On the 13th day of April, 1858, the plaintiff on an affidavit setting forth the above facts, applied to the judge of Saratoga county, for a summons against the defendant, under the act in relation to summary proceedings, &c.

(*Laws* 1849, *ch.* 193.) The summons made returnable on the 17th day of April, was issued. On that day the parties appeared, and by their consent, the proceedings were adjourned to the 19th day of April, on which day they again appeared, and the defendant's counsel interposed objections to the plaintiff's affidavit.

POND & LESTER, *for the plaintiff.*
A. BOCKES, *for the defendant.*

McKEAN, County Judge. To entitle a party to this summary remedy, it must appear that the relation of landlord and tenant exists. This is well settled. (*Benjamin* agt. *Benjamin*, 1 *Seld.* 387, 388.) Did the agreement set forth above, create that relation? In *Penfield* agt. *Rich*, (1 *Wend.* 385,) SUTHERLAND, Justice, says: "The mills were occupied by Gelson, on shares; by which I understand that the *net profits* were to be divided between him and the plaintiff." "It was a holding or working of the mills for a share of the profits. During this period, I am inclined to think *Penfield* and *Gelson* must be considered as having been *tenants in common* in the *mills* as well as the *profits*." In *Bradish* agt. *Schenck*, (8 *John.* 151,) "it was proved that one *Curtiss* took the land of the plaintiff, and planted it with corn upon shares." The court say, "letting land upon shares, if for a single crop, is no lease of the land. *Schenck* and *Curtiss* were tenants in common of the corn." Referring to this doctrine, COWEN, Justice, in *Putnam* agt. *Wise*, (1 *Hill*, 245,) says: "It is difficult to perceive why the same form of contract for two or more years, would not continue the relation of tenants in common for the whole time." In *Penfield* agt. *Rich*, the tenancy in common did continue several years. In *Putnam* agt. *Wise*, the agreement read: "The parties of the first part, do by these presents lease, and to farm let," &c., and provided that the parties of the first part were to furnish the plaster to be used, one-half the grass seed and grain for sowing and planting, and were to have certain sheep kept on the farm. The parties of the second part were to feed

the said sheep, they to have one-half the wool, and deliver the other half to the other parties, and were "to yield, pay and give unto the parties of the first part, one-half of all the grain raised by them on the said farm." COWEN, Justice, speaking of the agreement says : "Its words are in nearly the common form of a lease." But he adopts with approbation the language of Woodfall : " *The most proper and authentic form of words* may be overcome by a contrary intent appearing in the deed of demise," and holds that the parties to the agreement were tenants in common.

I think that the agreement under consideration, made the parties to it *tenants in common,* not only of the "products of the farm," and the "remaining profits," but of the farm also. (*See De Mott* agt. *Hagerman,* 8 *Cow.* 220 ; *Caswell* agt. *Districh,* 15 *Wend.* 379 ; *Dinehart* agt. *Wilson,* 15 *Barb.* 595 ; 4 *Kent's Com.* 95 ; *Taylor's Land. & Ten.* sec. 24 ; *Mayhew* agt. *Suttle,* 26 *Eng. Law & Eq. Rep.* 139.)

But in order further to consider the case, I will assume that the agreement *is* a lease, and creates the relation of landlord and tenant. The question then arises, what is the nature of the tenancy ? Is it a tenancy for years ? a tenancy at will ? a tenancy at sufferance ? or a tenancy from year to year ? It will be well very briefly to consider the nature of these different kinds of tenancies.

A lease for any fixed and determinate period of time, whether it be for a year, a quarter of a year, half a year, or several years, creates what is called a tenancy *for years.* (2 *Bl. Com.* 140, 143 ; 4 *Kent's Com.* 85.) The agreement in this case, does not specify how long the tenancy, if such it be, was to continue.

" An estate at will, is where one man lets land to another to hold at the will of the lessor." (4 *Kent's Com.* 111; 2 *Bl. Com.* 145.) " If the tenant be placed on the land without any *terms prescribed or rent reserved,* and as a mere occupier, he is strictly a tenant *at will.* (4 *Kent's Com.* 114; *Post* agt. *Post,* 14 *Barb.* 223.) "When a person takes possession of land by the license of the owner, for an indeterminate period, without any

rent reserved, he is a remaining instance of the old strict common law tenancy at will." (*Doe* agt. *Barker*, 4 *Dev. N. C. Rep.* 220.) In *Jackson* agt. *Bradt*, (2 *Caines*, 147,) KENT, Justice, says: " The circumstances under which the defendant was placed on the premises, prove him to have been strictly a tenant at will. There were no terms prescribed, nor any rent reserved, or demanded, or paid."

But in the agreement in question, terms are prescribed, and if the agreement is to be regarded as a lease, rent is reserved. The defendant is, therefore, not a common law tenant at will.

A tenant at sufferance is one who comes into the possession of land lawfully, and after his estate is ended, wrongfully continues in possession. (2 *Bl. Com.* 150; 4 *Kent's Com.* 116.) There is no provision in the agreement that the estate should end at any particular time. Therefore, Mosher has not wrongfully continued in possession, unless the plaintiff or his father, terminated by some act, his lawful term. It was by the deed, and not the death of his father, that the plaintiff acquired whatever rights he may have as against the defendant. Nothing was done to terminate Mosher's term, till the 11th day of March, 1858. He remained on the premises lawfully till that day, at all events. On that day a notice was served on him, requiring him to remove from the premises. The statute reads thus: " Whenever there is a tenancy at will or *by sufferance*, created by the tenant's holding over his term or otherwise, the same may be terminated by the landlord's giving one month's notice in writing to the tenant, requiring him to remove therefrom." (*Sec.* 7, *title* 4, *ch.* 1 *of part* 2 *of R. S.*) I have shown that a common law tenancy at will, does not exist between the parties, and as the defendant was *lawfully* in possession, and was not *wrongfully* holding over his term on the 11th day of March, it follows that there was no tenancy at sufferance, at that time; and if not then, there is not now; for the statute notice of a month, is provided *to terminate*, not *to create* a tenancy at will or by sufferance.

" The reservation of an *annual rent*, is the leading circumstance that turns leases for *uncertain terms* into leases *from year*

*to year.* If the tenant holds over by consent given, either expressly or constructively, *after the determination of a lease for years,* it is construed to be a tenancy *from year to year.* A tenant for one year holding over, (by consent of his landlord,) is a tenant *from year to year.*" (4 *Kent's Com.* 112, 114 ; *Jackson* agt. *Bradt,* 2 *Caines,* 174 ; *Nichols* agt. *Williams,* 8 *Cow.* 13 ; *Jackson* agt. *Salmon,* 4 *Wend.* 327.)

If the agreement in question is a lease, if the relation of landlord and tenant does exist between the parties, and if the reservation of " one-third of all the remaining profits," &c., is to be considered as annual rent reserved ; then it would seem to follow, that by continuing in possession, the defendant has turned his lease for an uncertain term, into a lease from year to year, or something very much resembling it.

But does the statute make any provision for summary proceedings against a tenant who is strictly a tenant from year to year ? It provides thus : " Any tenant or lessee at will, or at sufferance, or for any part of a year, or for one or more years, &c., may be removed," &c. (*Laws* 1849, *ch.* 193, § 1.) The words, " for any part of a year, or for one or more years," mean the same as " for years," as I have shown above. The statute, therefore, authorizes these proceedings against three classes of tenants, namely : tenants at will, at sufferance, and for years ; but does not seem to include those who are strictly tenants from year to year. Is the defendant, however, if a tenant at all, technically a tenant from year to year, and nothing else ? In *Post* agt. *Post,* (14 *Barb.* 257,) HAND, Justice, says : " A tenancy from year to year, so long as both parties shall respectively please, is in one sense, a tenancy *at will ;* but must⸱ be terminated at the end of the year by proper notice. What notice is requisite to terminate an estate from year to year, at the will of the parties, it is not now necessary to deeide." (*See also Prouty* agt. *Prouty,* 5 *How. P. Rep.* 81.)

I am of the opinion that the statute includes two kinds of tenancies at will. 1. A strict tenancy at will, as at common law. 2. A tenancy *at will from year to year.*

The first may be terminated *at any time* that a party wills,

by giving one month's notice in writing. The second may be terminated *at the end of any year* that a party wills, by giving one month's notice in writing, *terminating with the year.*

In *Post* agt. *Post*, Justices WILLARD and HAND agreed that a tenancy from year to year, could be terminated only at the end of the year. Justice WILLARD thought, however, that no notice would be necessary before instituting summary proceedings, and cited *Nichols* agt. *Williams*, which, however, was before the Revised Statutes. HAND, Justice, thought notice would be necessary. But as *Post* agt. *Post* was a case strictly of tenancy at will, the question of notice before summary proceedings in case of tenancy from year to year, was not adjudicated. The rule held by the court for the correction of errors, in *Anderson* agt. *Prindle*, (23 *Wend.* 616,) would require that a month's notice to quit at the end of some year, counting from the commencement of the tenancy, must be given, before summary proceedings can be maintained.

If the relation of landlord and tenant exists between the parties to this proceeding, I think the defendant must be considered a tenant at will from year to year, and was entitled to one month's notice to quit, terminating with the year. No such notice was given. The tenancy, if tenancy it is, commenced on the 17th day of *February*, 1855. The notice to quit, was served on the 11th day of *March*, 1858.

The notice was insufficient for another reason. It did not fix any day or time, expressly or by any description, for the defendant to quit. (*Currier* agt. *Barker*, 2 *Gray's Mass. Rep.* 224.)

It follows, therefore, that whether the agreement between Wright, senior, and the defendant, be regarded as making them tenants in common, or as creating the relation of landlord and tenant, in either case, the proceedings must be dismissed.

Ordered accordingly.