Sparks *a.* Leavy.

*Levi S. Chatfield,* for the appellant, objected that no notice of argument had been served.

*Francis Tillou,* for the respondent, admitted the fact, but contended that in this district only one notice of argument of an appeal was necessary.

---

## SPARKS *a.* LEAVY.

*New York Superior Court; General Term, December,* 1863.

Parties in Action for Injury to Real Property.—License to remove Fixtures.—Remedy on fraudulent Purchase of Goods.

Where one of several persons, who hold the legal title to real property as tenants in common, is in possession under an agreement by which the others have released their interests and agreed to convey to him, he may alone maintain an action for an injury to the premises by a third person, and may recover the whole damages.†

The owner of real property, being applied to by one who had furnished certain fixtures which he had not been paid for, for leave to enter and remove them, gave him to understand that he himself had no objection, but that he could not give his express consent, for fear of trouble with the mortgagees. *Held,* that this was not a license to remove them, and that he was not thereby estopped from suing him for their removal.

Where a contract for the sale of goods, after having been executed on the part of the seller, is cancelled by the parties, and a new contract as to the mode of payment is substituted in place of it, the seller cannot rescind the sale and reclaim the goods, by reason of a fraudulent intent, on the part of the buyers,

---

* Present, Leonard, P. J., Clerke and Barnard, JJ.

† Upon the question whether the plaintiff in this action had proved such equitable ownership in himself, Barbour, J., dissented.

not to pay therefor, existing only at the time of the original contract. And the mere failure to perform the new contract is not sufficient to show that the fraudulent intent continued in respect to the new contract.

Exceptions taken at the trial of the cause, and directed· by the court to be heard in the first instance at general term.

This action was brought by William H. Sparks against Thomas Leavy, to recover damages caused by the wrongful entry of the defendant into a house, described in the complaint as No. 224 East Fiftieth-street, and alleged to have been owned and possessed by the plaintiff at the time of such entry, and for the severance and removal therefrom of certain marble mantels, of the value of four hundred dollars, which were set and affixed to the freehold. The answer denied that the plaintiff was the' owner or in possession of the premises or of the mantels at the time of the alleged trespass, as well as that such mantels were wrongfully removed; averred that, in such removal, no injury was done to the premises; and admitted the value of the mantels to have been $385.

The cause was tried on the 27th of February, 1863, before Mr. Justice MONELL and a jury.

Upon the trial, the plaintiff proved that, at the time of the alleged trespass, he was in possession of the house described in the complaint, by a person whom he had placed therein to take care of it; that the ground upon which it stood had, some time prior to the commission of the trespass, been conveyed to the plaintiff and his two partners, Walling and Hesler, who caused the house thereon to be erected; and that during the progress of such construction, the defendant furnished and put up the marble mantels, upon a contract whereby a credit was given to the owners of the building. The plaintiff then read in evidence a written instrument, under seal and witnessed, executed before the trespass, by himself, Walling, and Hesler, which—after reciting that the parties had theretofore been engaged as partners in the business of building houses and buying and selling real estate, and had acquired and then possessed certain real and personal property (undescribed), and that they had agreed to dissolve the partnership and divide their property among them—declared that such copartnership was dissolved, that Walling and Hesler " shall have and possess, free

from all claims of the party of the first part" (the plaintiff), certain lots and premises in the city of New York, described by metes and bounds (and not by street numbers); and that "the party of the first part shall have and possess all the rest, residue and remainder of the said real and personal property." To this was added a mutual covenant that each of the parties should make, execute, and deliver to the others all such deeds and instruments in writing as should be necessary to carry the agreement into effect.

Upon the closing of this evidence, the plaintiff claimed to recover the admitted value of the mantels, and rested. The defendant thereupon moved for the dismissal of the complaint, raising the objection, among others, that the deed or agreement executed by the plaintiff and his partners, above referred to, did not describe the house in question, nor show that it was, or was intended to be, included among the parcels set apart to the plaintiff. The motion was overruled, and an exception taken.

The defendant then attempted to prove, by his witnesses, that he had permission from the plaintiff to remove the mantels; and then again moved to dismiss the complaint, which was refused, and exception taken.

The court directed the jury to find a verdict in favor of the plaintiff for $385, being the value of the mantels, to which the defendant excepted; and the court directed the entry of the judgment to be suspended, and the exceptions heard, in the first instance, at general term.

During the progress of the trial, evidence was offered by the defendant for the purpose of showing, by way of justification, that he was induced to furnish the mantels by certain fraudulent representations of the plaintiff; which testimony was excluded, and the defendant excepted.

The material parts of the testimony are stated in the opinion of the court.

The justice presiding at the trial directed a verdict for the plaintiff, the exceptions to be heard, in the first instance, at general term.

*J. Graham,* for the defendant.

*A. M. Burr,* for the plaintiff.

By THE COURT.*—ROBERTSON, J.—Under the old system of pleading, the present action would have been considered as one of trespass for breaking the plaintiff's close, carrying away chattels, and injuring the freehold by committing waste. Possibly, under that system, unless the license to the defendant to enter was void as obtained by imposition, the action, as one of trespass for breaking the plaintiff's close, could not have been maintained (Dumont *a.* Smith, 4 *Den.*, 319), and the right of action for the other injuries, which were merely *alia enormia*, might have fallen with it. The present liberal system of pleading makes the complaint one for three causes of action, a wrongful entry on lands, injury to the premises in taking down certain fixtures, and carrying away and converting them.

The plaintiff derived title to an undivided third of such chattels so converted, by a deed to himself and his two partners (Walling and Hesler), of the premises of which they were fixtures, in October, 1861. He claimed, however, an equitable title to the whole ownership, with the right of possession thereof, under an agreement made in January, 1862, between himself and his partners, dissolving their partnership, and agreeing to a division of partnership property. By it, the plaintiff's partners agreed that he should have and possess, among other property, the premises in question, and to execute all deeds or instruments in writing necessary to carry such agreement into effect. Under that agreement, the plaintiff entered into possession of such premises; and placed an occupant in them to take care of them for him without rent.

Any one in actual possession of premises may bring an action for an injury done to such possession. (9 *Bac. Abr.*, 458, tit. TRESPASS, ch. 3.) But by the contract to convey, the plaintiff became the equitable owner of the premises immediately, and all the fixtures. (2 *Story, Eq. Jur.*, 628, §§ 789, 790, 1212.) Nothing further was to be done on his part to entitle him to a conveyance, so that any loss would fall on him, and not on the legal owners. (1 *Sugd. on Vend.*, 115, 213, 276, 277.) He was therefore entitled, as the party damnified, to sue for the value of such fixtures, and any other injury. (Gardner *a.*

---

* Present, ROBERTSON, WHITE, and BARBOUR, JJ.

Heartt, 2 *Barb.*, *S. C.*, 167 ; Rood *a.* N. Y. & Erie R. R. Co., 18 *Ib.*, 80, 83.)

The objection of non-joinder of the other legal owners of the fixtures would merely influence the question of amount of damages, since in actions for injuries to real estate, the non-joinder of tenants in common can only be taken advantage of by plea in abatement. (Wheelwright *a.* Depeyster, 1 *Johns.*, 471 ; Brotherton *a.* Hodges, 6 *Ib.*, 108 ; Bradish *a.* Schenck, 8 *Ib.*, 157.) Even if the defect had appeared on the face of the complaint, it could not have been taken advantage of by demurrer, motion in arrest of judgment, or writ of error. (Addison *a.* Overend, 6 *T. R.*, 766 ; Scott *a.* Godwin, 1 *Bos. & P.*, 74, 75 ; Rich *a.* Penfield, 1 *Wend.*, 380, 385, 386.) After judgment by one tenant in common, another could sue and recover for the damage to his interest. (Sedgworth *a.* Overend, 7 *T. R.*, 275.) The rule is different in actions on contracts relating to real estate. (Hill *a.* Gibbs, 5 *Hill*, 56.) This rule, however, would reduce the plaintiff's damages two-thirds. To recover the whole value he must rely on his equitable ownership and right of possession, unless the defendant, by severing the fixtures from the freehold, made them chattels, and the plaintiff legal owner.

The only evidence offered to prove a license to enter or carry away the chattels was the defendant's own testimony. He stated that he applied to the plaintiff to let him take them away in payment of the claim he had against them for affixing them to the freehold, and the plaintiff promised to consult his counsel. The latter afterwards told the defendant he had done so, and was advised by such counsel not to consent to such removal. He did not say *the defendant might remove them ; but gave him to understand* "he had no objection to the removal *as far as he was concerned,* but could *not give his express consent,* for fear of trouble with the mortgagees." This was certainly not a transfer of the property in the chattels in satisfaction or on account of the claim, supposing the plaintiff had a right to make it without consent of the mortgagees. Whatever the rights of others were, or his duty to protect them, he certainly thought the mortgagees had some claims, and showed he did not mean to infringe them by a transfer of part of their security. Whatever his motive was, he had a full right to withhold his consent to any transfer, after the chattels had be-

come his by being affixed to the freehold. The occupants of the premises were mere tenants by sufferance, and had no right to give any license to injure the premises. In the cases of Thompson *a.* Blanchard (4 *Comst.*, 303), Edgerton *a.* Thomas (5 *Seld*, 40), and Ford *a.* Williams (24 *N. Y.*, 359), innocent persons were induced to part with value or to do some act, by the failure of a real owner or party interested to object. In this case the plaintiff did nothing to induce the defendant to carry away what did not belong to him, and appropriate it to his own use, and was therefore not estopped from reclaiming it.

Any fraudulent intention on the part of the plaintiff, in August, 1861, when jointly with his partners he agreed to pay the defendant for affixing the chattels in question to the realty, would not be available in this case. By the terms of such agreement, the latter was to be paid by instalments, in cash, as his work advanced, and by the conveyance of a house and lot. In January following, he accepted a lot of land, his own note for $350, and the note of the plaintiff's firm for $385, at six months, in full satisfaction for his dues under such agreement. The agreement was then cancelled by mutual consent, in writing, and declared void. The defendant had evidently received large payments on account of such contract, between August, 1861, and January, 1862. The mere existence of judgments against the plaintiff, at the former date, by itself, was very remote evidence of an intention, on the part of his firm, not to pay. It is very doubtful whether an intention by one of three joint contractors not to pay, would be sufficient to avoid the contract, even under the decision in Hennequin *a.* Naylor (24 *N. Y.*, 139). But unless that intention continued in January, 1862, and applied to the new contract then made on the settlement, I apprehend its existence in August, 1861, was immaterial. The defendant ratified the first agreement by doing the work and receiving nearly all his pay progressively under it for over six months, and finally substituting a new agreement in place of it, and cancelling it. Whether a preconceived intention not to perform such new contract by the plaintiff would vitiate it, and remit the defendant to his rights under the old contract, so as to enable him to reclaim the articles furnished under it, is not necessary to be passed upon, as there is no evidence to establish such intention. The mere failure to give the

deed or note stipulated for in such new contract, or pay the note of the plaintiff's firms, would not be sufficient or relevant to establish it. Such failure may be sufficient, as a non-performance of the condition on which the discharge contained in such new contract was given, to enable the defendant to sue generally, as he had a right to do, or perhaps even to sue upon the original contract, for the amount due him for goods furnished and his labor; but would not authorize him to rescind that contract for fraud in its inception, so as to reclaim the articles furnished. He waived that right by agreeing to cancel the old agreement, substitute the new, and accept the deed and two notes in full satisfaction, without any fraud practised on him. The exceptions to the questions as to the existence of judgments against the plaintiff, in August, 1861, and the failure to give the defendant the deed and his note mentioned in the agreement of January following, were not well taken. It is to be observed, also, that the defendant has never offered to return any benefit received by him under either agreement except the note of the plaintiff's firm; and on that occasion it was not as a right, but as a favor, he asked to get back his goods furnished. He still holds, for aught that appears to the contrary, the contract of Michel Barker to deliver him a deed of the lot in 74th street, and any lot conveyed to him pursuant to the contract of August, 1861.

Whether, therefore, the defendant entered on the premises lawfully, or was a trespasser *ab initio*, is immaterial; he is liable for carrying away and converting the fixtures in question, and the damage to the premises by so doing. He has fixed their value in his answer, and has not contradicted it by other evidence, and was at least liable for that amount which is the limit of the plaintiff's claim.

The exceptions were properly overruled. The motion for a new trial ought to be denied, and the plaintiff allowed to enter judgment on the verdict in his favor.

BARBOUR, J. (after stating the facts).—The evidence as to fraudulent representations, alleged to have been made by the plaintiff, was, I think, properly excluded by the court. Certainly, the defendant had no right forcibly to sever the property from the freehold to which he had himself affixed and

annexed it, even though the contract, under which the work was done, was procured by fraud. His remedy was by action against the person by whose fraudulent representations he had been induced to part with his property, and to convert it into realty.

I am of opinion, also, that the motions to dismiss the complaint were properly overruled. Without passing upon the validity of the written agreement of the plaintiff and his two partners as a legal or equitable conveyance, because it is unnecessary now to consider that question, it is sufficient to say that there is nothing contained in that instrument, nor in any evidence given in the cause, tending to prove that the premises in question were covered by its provisions, in order to show that the house belonged to the plaintiff and his two partners, as tenants in common, and not to the former alone; and the rule in this country is, that, for a trespass upon lands, the action must be brought by all the owners, or persons standing in like relation to the property, and cannot be sustained by one of them alone, if an objection to the non-joinder of the others is taken by the pleadings. (See Hill *a*. Gibbs, 5 *Hill*, 56, and *note*.)

But where, as in this case, no objection for want of parties is made by the answer, and it appears upon the trial that the action has been brought by one, only, of several tenants in common, the suit is not thereby abated, but the plaintiff may proceed and take a verdict and judgment for his aliquot share of the damage sustained by all (*Ib*.), leaving his co-tenants to bring their separate action for the injury done to them. (Sedgworth *a*. Overend, 7 *T. R.*, 275.)

The plaintiff, therefore, was entitled to recover the damage he had himself sustained, but not for the injury to the others; and for that reason it appears to me the peremptory direction to render a verdict for the full value of the property was erroneous.

The verdict should be set aside, and a new trial granted, with costs to abide the event.

Judgment for the plaintiff on the verdict.