## ADMINISTRATOR OF ZACHARIAH CILLEY'S ESTATE *v.* HYLAS TENNY.

*Evidence. Auditors. Account. Book Account.*

The auditors in this case reported that on a certain day the parties made a written contract, the terms of which they set forth in their report. They further reported that subsequently, and on the same day of the execution of the written contract, and before they separated, the parties made a verbal contract, varying the terms of the written contract in certain respects which were reported by the auditors. The auditors made no further report of the circumstances attending the making of this verbal contract, but allowed certain items of account accruing thereunder; and the county court allowed these items and rendered judgment therefor upon the report; *Held,* that though the auditors erred in not specially reporting the facts relied on to show that the parol agreement was *subsequent* to the written one, yet the supreme court could not hold, *as matter of law,* that it was not in fact subsequent, and the judgment of the county court was therefore affirmed.

In an action of account between the owner of a farm and one to whom he had let it on shares, the defendant, the landlord, among other things, sought to recover for damages sustained by him in consequence of the other party's neglecting to keep up the fences, and hoe the corn, in a good husbandlike manner, as by the lease he had contracted to do: *Held,* that these damages were a proper subject for adjustment in such action.

In an action of account items of book account can not be adjusted.

ACCOUNT. The auditors reported that in January, 1852, the plaintiff's intestate and the defendant made a written contract by which it was agreed that the former should carry on a farm belonging to the latter, for one year from the 1st of April, following; that by the terms of this contract, the plaintiff's intestate was to carry on the farm and keep the stock, which the defendant should put thereon, in a good husbandlike manner, pay the taxes for the year on the farm and stock, and give the defendant one-half of the crops raised on the farm, and one-half of the butter and cheese made from the defendant's cows on the farm, and was to receive one-half of the increase of the stock; that subsequently, and on the same day of the execution of this written contract, and before they separated after making such written contract, they made a verbal contract by which it was agreed that the defendant was to have the right to take possession of, and carry on the farm and other property embraced in the first contract, at

27

any time during the year, if the plaintiff's intestate should be unable on account of ill health to carry on the farm; that the plaintiff's intestate went into possession of the farm and other property, on the 1st of April, 1852, planted his crops in the spring, and hoed the tillage land over once and partly a second time, when his health failed, and his neighbors finished the hoeing for him; that part of the corn land was not well hoed, and that the fences were not kept up in a good husbandlike manner, and that he did no work after the 1st of July, and died on the 18th of September, 1852; that his widow procured the oats on the farm to be cut, and they were drawn into the barn by the defendant; that the widow also gathered the corn and commenced digging the potatoes and picking the apples; that at this time no administrator had been appointed upon Cilley's estate, and that his widow directed her hands to harvest only her share of the potatoes and apples; that about the 1st of October, while these hands were at work under these directions from the widow, the defendant notified them that he should take possession of the premises and should finish harvesting the crops; that he did so, and took and appropriated to his own use whatever remained unharvested at that time.

The auditors also found that the defendant received more than his share in the increase of the stock, and in the crops and produce of the farm, to wit: potatoes, apples and pork to the amount of twenty-two dollars and sixty-eight cents ($22.68), which sum they allowed to the plaintiff.

The defendant presented the following account in offset:

| | | |
|---|---|---|
| 1. To one-half seed for farm — oats, peas and potatoes, | $7.17 |
| 2. To time tapping sugar place, | 50 |
| 3. To horse to go to Chelsea and Bradford, | 1.00 |
| 4. To one-half sugar made on farm, | 4.00 |
| 5. To one-half taxes on farm and stock, | 8.68 |
| 6. To work harvesting oats, digging potatoes, picking apples, and drawing home my own oats, | 9.50 |
| 7. To damages from not repairing fences and neglecting to hoe corn, | 10.00 |

$40.85.

Admr. of Cilley's Estate *v.* Tenny.

The auditors reported in regard to this account, that items Nos. 4 and 5 accrued under the written contract in regard to carrying on the farm, and they allowed the same at twelve dollars and sixty-eight cents (12.68); that item No. 6, of nine dollars and fifty cents, accrued under the verbal contract between the parties above mentioned; that the plaintiff objected to any parol evidence in regard to such verbal contract, but that the auditors received such evidence and allowed this item, subject to the opinion of the court, as to the admissibility of such evidence, and of that item in the accounting between the parties; that items Nos. 1, 2 and 3 accrued for property sold and services rendered Cilley by the defendant; that they were proper charges on book, and did not arise out of, nor belong to, either the written or verbal contract between the parties above set forth, and the auditors allowed them, subject to the opinion of the court as to their admissibility in this action.

As to item No. 7, the auditors reported that it was for the damage suffered by the defendant from the neglect of the plaintiff's intestate to hoe the corn and keep up the fences in a good husbandlike manner, and they allowed this item also, subject to the opinion of the court as to its admissibility in the accounting.

The county court for Orange County, at the June Term, 1857, —UNDERWOOD, J., presiding,— allowed the plaintiff's account, and all the defendant's account except the three first items, and rendered judgment for the defendant for nine dollars and fifty cents, being the balance between the two accounts, to which the plaintiff excepted.

*C. W. Clarke,* for the plaintiff.

*William Hebard,* for the defendant.

ALDIS, J. This is an action of account. It is brought by the administrator of the intestate to recover of the defendant for what he has received more than his just share of the profits of a farm let by the defendant to the intestate upon shares. The questions in issue all arise upon items in the defendant's account presented in offset.

I. The court below allowed items to the amount of nine dollars

and fifty cents, growing out of a verbal contract between the parties. The plaintiff objects that the lease was in writing, and that this alleged verbal contract was an agreement contemporaneous with, and differing from, the lease.

Negotiations and agreements anterior to, or contemporaneous with, the execution of the lease, should be excluded. But *subsequent* agreements are not within the rule. It is true, however, as to subsequent agreements, that the fact, that they are subsequent, should clearly appear; 3 Phil. Ev., Cow & Hill's Notes, 1477; 1 Greenleaf's Ev., § 303, § 304.

The auditors state that the parties made a contract in writing, and set forth its terms. They then proceed: "the said parties subsequently, and on the same day, and before they had separated, made a verbal contract," etc. Upon this statement the county court held that the verbal contract was *subsequent* to the lease; and although it added a new term to it, yet such new term was binding upon the parties.

We can not say, as matter of law, that a verbal contract could not have been made on the same day they made the lease and before they separated, and yet be clearly subsequent to the execution of the lease. It would depend upon various facts attending the transaction. The inquiry at once arises, how long were they together, when was the lease made and delivered, what was then said, when was the verbal contract made and what was then said, did they do any other business? etc. These inquiries were, without doubt, made before the auditors, and the facts in regard to them should have been embodied in their report. As it is, we have only their conclusion, not the facts upon which it is based. As the county court saw fit to accept the report and allow the items as standing upon a subsequent agreement, we can not say that their decision herein was erroneous; for the auditors have so found the fact. Yet it is obvious that there is danger in leaving auditors to report their conclusions in such general terms. The precedent is not to be encouraged. The facts attending the transaction, and which are relied upon to show that the parol agreement was subsequent, should have been specially reported, so that the court might be able to decide whether in fact the agreement was or was not subsequent.

It is said the subsequent agreement was without consideration. Clearly, it was for the benefit of both parties. The deceased, if his health failed, was thereby released from the burden and expense of carrying on the farm. The defendant was enabled to resume the direct control of it, without the risk of having it pass into the hands of a sub-tenant to whom he might not be willing to have it underlet

II. The court below allowed two items charged by the defendant "as damages from not hoeing corn and not mending fence, ten dollars."

This action of account is brought by the administrator of the tenant against the landlord for having received more than his share of the profits. The defendant raises no objection to the form of the action, but is content to proceed with the accounting.

Upon what basis is the account to be taken? Upon that of the agreement between the parties. It was a letting for one year upon shares.

It has been repeatedly held that account lies between landlord and tenant upon such a contract; *Albee* v. *Fairbanks*, 10 Vt. 316; 15 Vt. 152; 18 Vt. 350; *Aiken et als.* v. *Smith*, 21 Vt. 172.

Nor does this stand upon the language of our statute alone, and the fact that they are, by agreement between themselves, tenants in common; but upon the doctrine of the common law that by such contract the tenant is bailiff of the landlord.

In *Albee* v. *Fairbanks*, REDFIELD, Justice, says, "the defendant is liable in account at common law, and may be charged as bailiff of the common goods." By such a contract the tenant becomes bailiff by agreement, as much so as if "particularly appointed," to use the language of the old books.

At common law a bailiff, unlike a receiver, is liable as well for what he might have received by using reasonable care and diligence, as for what he has received; Co. Litt. 172, *a*; 12 Mass. 149; 11 Vt. 321; Willes 208; 9 L. &. E 337.

This liability here exists, not only from the nature of the relation, but by the express agreement of the parties. The "damages," so called, grow out of the lease. The profits coming to the lessor were diminished by the amount of ten dollars, through the failure of the lessee to do his duty under the lease. In taking

the account, it would not be just to allow the tenant his share of all that was in fact received, but release him from liability for profits which he might have made with ordinary diligence, but which have been lost through his negligence. Such loss of profits should, both in justice and by contract, be charged to him in the account.

Nor is there any reason why such loss of profits should not be accounted for in this form of action. As account is the proper remedy for most of the controversies which grow out of such tenancies, it is proper that all matters of accounting between parties to such contracts should be adjusted in the same action. It is reasonable that the accounting by the parties upon such a contract, in a court of law, should proceed upon the same basis that it would if the parties were to get together by themselves and without suit settle the same matters, viz: upon the basis of what had been received, and what ought to have been received by using reasonable care and diligence. They are not less the proper subjects of an accounting because they are called damages.

The decisions of our courts upon this subject have uniformly favored the application of this action to the adjustment of all the controversies arising upon such contracts, as to the joint interests of the parties; 15 Vt. 152; *Joy* v. *Walker*, 29 Vt. 260.

III. As this is an action of account, the items of book account were properly disallowed. The statute, which allows items of account to be adjusted in book account, does not operate *vice versa* to allow the adjustment of items of book account in account.

Judgment affirmed.