PETER LA POINT *v.* CHARLES A. SCOTT AND ASENATH SCOTT.

*Contract. Principal and Agent. Account. Lease. Landlord and Tenant.*

In a dispute between parties as to some of the terms of a contract, the whole negotiation out of which the contract resulted may be shown, including a paper drawn by one of the parties and conceded to give the details of the contract as finally settled, with certain variations.

A general agent to lease lands cannot by leasing his own land with that of his principal, make his principal, without his knowledge or assent, a joint lessor

La Point *v.* Scott et al.

of the agent's lands, so as to make the principal jointly liable with him upon the stipulations in the lease in reference to the agent's property, as well as the principal's.

It has been settled by repeated decisions in this State that the action of account is the proper remedy for the adjustment of controversies growing out of the common mode of leasing farms, where the products and profits are to be divided between landlord and tenant.

A tenant's claim for damages because the landlord did not furnish the number of cows provided for in the lease, might be settled in the action of account.

But breaches of contract on either part, whereby the making of profits has been prevented merely, need not necessarily be brought into the account, and may be sued for independently, and a remedy obtained by a recovery in damages for such breach.

A tenant's claim for not being allowed to keep his oxen on the premises through the year, out of the products of the farm, as provided in the lease, stands on this ground.

Where a tenant furnishes farming implements at the request of the landlord which are to remain on the farm after the lease expires, the landlord will be bound for them directly and they need not be brought into the farm account.

Where salt for the farm is to be furnished, one half by each party, and one party furnishes more than his half, it should be settled in the general accounting, the same as seed.

But if one furnishes the whole by an express request of the other, and with an express promise to pay for his half, it would be ground for an immediate and separate claim, as if the tenant loaned the landlord money to furnish his half.

Where a farm is let upon shares, in order to create an independent cause of action for some portion or article of the farm productions which the landlord received, an express contract should be shown to take it out of the general account.

Where the tenant furnishes such articles as the landlord wants, as wood, butter, &c., by an express stipulation in the lease, and to be paid for by the landlord, if they were the sole property of the tenant he may bring a separate action for them; but if they were products of the farm which belonged to them jointly, then they should go into the general accounting and the tenant could not maintain a separate action for them without showing an express understanding that they were not to enter into the general account.

ASSUMPSIT. This action was brought by the lessee upon shares of the defendants' farm, to recover for various articles furnished

by the lessee, and for damages arising from alleged breaches of the contract between the parties.   The declaration contained the common counts and three special counts   Plea, the general issue and pleas in offset.   Trial by jury, April Term, 1862.

The defendants objected to the introduction of any testimony in support of any of the plaintiff's claims on the ground that if he had any foundation for them it grew out of the lease of the defendant's farm to the plaintiff, and the same could be settled only in an action of account.   The court overruled the objection and the plaintiff introduced evidence tending to prove, that the defendant, Charles A. Scott, as the general agent of Asenath Scott to transact her business for her as he thought best, on the last of February, 1859, leased upon shares to the plaintiff the farm of Asenath Scott, together with a piece of land called the Warren lot, belonging to Charles A. for one year from the first of March, 1859, and agreed to put on 15 good cows.   The plaintiff was to put on a yoke of oxen to do the farm work with, which were to be kept out of the produce of the farm through the year. Asenath Scott was to have certain rooms in the house, and the plaintiff was to furnish her with wood, milk and butter, and such articles as she might want for her use, for which the plaintiff was to be paid ; and it was understood that this contract as above set forth in substance was to be reduced to writing.   The next day the defendant Charles A. delivered to the plaintiff a lease, to be executed by the plaintiff and Asenath Scott, of her farm, and it provided for a suitable number of cows.   The plaintiff objected to signing it as it did not include the Warren lot, or provide for 15 cows.   Charles A. then said he would make a lease to include said lot and cows, but no writing was ever afterwards made, and this was never executed.   The plaintiff's evidence further tended to show that the plaintiff under the above agreement, took possession of said farm about the first of March ; that the defendants did not put on but 13 cows, and that soon after the spring's work was done, the defendant, Charles A., told the plaintiff that by the terms of the contract he had no right to keep his oxen on the produce of the premises after he had finished his spring's work, and must take them away ; that the plaintiff insisted he had a

right to keep them through the year ; that Charles A. insisted he must take them away and they should not stay another minute ; that the plaintiff feared personal violence, and supposed he should have to fight with " axe and knife " if he kept them there, and under the supposition that a personal combat might take place between him and Charles A. if he kept them there, he sold them ; but there was no evidence to show that either of the defendants threatened to commit any injury to the person of the plaintiff. And the plaintiff gave evidence to show that the salt charged in item No. 1 of the specifications was furnished by him at the request of the defendants although the defendants were to furnish one-half of the salt necessary for dairy and other purposes on the farm ; that items Nos. 2, 3, 8, 9, 16 and 18, being for wood, butter and milk, were furnished to Asenath Scott under the arrangement above named, and that she promised to pay for the same ; that items Nos. 5 and 7, plow point and milk rack, Charles A. agreed to furnish, but neglected so to do, and requested the plaintiff to purchase them and he would pay him for them ; that item No. 10 was for a calf raised on the premises that year, for which the plaintiff and Charles A. bid, and that Charles A. bid $1.50, which was the highest bid, and he took the calf and was to pay this sum for the plaintiff's half ; that item No. 20 was for damage, $10, for not allowing the plaintiff to keep the oxen on the place ; that item No. 21 was for damage in not furnishing the cows as agreed, $15 ; that Asenath Scott was old and Charles A. had been for several years her general agent for leasing the land and cows and in the management of her other affairs, but there was no testimony to show that he had ever before leased her land and cows with his own. To all the foregoing testimony the defendants objected, but the court admitted the same, to which the defendants excepted.

The defendants' evidence tended to show that the lease made by Charles A. contained the whole of the agreement first made between him and the plaintiff, and that this being rejected by the plaintiff, Asenath Scott first leased her farm and seven cows to Charles A. and that he then leased the same together with his, the Warren lot, and other cows to the plaintiff. And the

defendant's testimony tended to deny any agreement that the plaintiff should keep the oxen on the place after the spring's work was done, but that the plaintiff should hire them kept off the farm ; that he only insisted upon the contract between them in this respect, and used no threats of violence ; that he offered to put on 15 cows but the plaintiff said he did not want any more than he had as there was not feed for any more.

There was much other coflicting testimony in respect to the relation in which Charles A. stood to the farm of Asenath Scott when he leased to the plaintiff, and also in respect to other stipu- lations in the contract and tending upon each side to support the testimony already given, and also in respect to other facts not material to be stated.

The charge of the court is sufficiently referred to in the opin- ion. Verdict for the plaintiff,—exception by the defendants.

*William C. Wilson* and *J. H. Dewey*, for the defendants.

*H. R. Beardsley*, for the plaintiff.

POLAND, CH. J. We think there was no error in admitting in evidence the unexecuted lease from Asenath Scott to the plain- tiff. The defendants' claimed that it contained the whole of the agreement first made relative to leasing to the plaintiff, and the plaintiff conceded this, except that it did not cover the Warren lot owned by Charles A. Scott, and did not provide for so large a number of cows, as he claimed the real contract did. Both parties seem to have admitted that this draft of lease truly stated the details of the contract as finally settled, with certain varia- tions. On this ground it was admissible. It was a part of the transaction and negotiation, between the parties, which finally resulted in a contract between them, and as a dispute arose as to some of the terms of that, the whole negotiation out of which the contract resulted, may be shown. It may be well enough called a part of the *res gestae*. Being drawn up by one of the defendants, it was admissible as a declaration or statement by him, of what the first agreement was.

It does not appear that any undue or improper use was allowed

to be made of the paper, and no satisfactory reason is given for the claim that the defendants were unjustly prejudiced by its introduction.

All the other objections to evidence, arise equally upon the charge to the jury upon the legal effect to be given to it, and therefore need not be considered as preliminary objections.

The court charged the jury that if the defendant Charles A. Scott, was the general agent of his mother Asenath, for leasing her farm, and managing her business, then he might lease her farm jointly with his, so as to make her jointly liable with him upon the stipulations in the lease in reference to his property, as well as her own.

This proposition of the charge we think is unsound. That Asenath Scott might herself lease her land and cows, jointly with her son's land and cows, with his assent, is undeniable, and so become jointly liable with him, for contracts in reference to his property, as well as her own. If it be true then, that a general agent can bind his principal to the same extent that the principal can bind himself, this charge was correct.

But a general agent, is not a universal agent, having the complete disposal of all the rights and property of the principal. Such an agency completely merges the legal existence of the principal in the agent, and such an agency will never be inferred from general expressions, and can only be made out by the clearest proof of express authority. Story on Agency, § 21. Charles A. Scott being the general agent of his mother to lease her farm, had unlimited authority in relation to the terms of leasing, but had no authority at all to lease for her, lands not hers, and make her liable on the provisions of the lease. If he could make her, without her knowledge, or assent, a joint lessor of his land and cows, he could equally make her lessor with any other farm owner who should assent to enter into such relation, and could extend her liability to any extent, for property in which she had no interest. If he could bind her in this way, he could form a partnership between her and another, and subject her to partnership liability, without her knowledge or assent. Nothing but clear proof of the express delegation of such power,

will authorize one to act for, and bind another to such an extent, and it cannot, and ought not, to be inferred from a general authority to lease her farm, and manage her business. If there was any evidence tending to show a grant of such extensive and unlimited authority it should have been submitted to the jury ; and so of any evidence of express assent to this particular contract, either prior or subsequent. As this view renders a new trial necessary, we do not deem it important to discuss very fully the various different items of the ¡plaintiff's claim, in reference to which exceptions were taken.

It has been settled by repeated decisions in this state, that the action of account is the proper remedy for the adjustment of controversies growing out of this common mode of leasing farms, where the products and profits are to be divided between landlord and tenant. And a disposition has been shown, to require every thing growing out of such a contract, affecting the proper settlement and division, to be brought into such accounting.

The plaintiff's claim for damages, because the defendants did not furnish the full number of cows provided for by the lease, under former decisions might have been brought into the accounting in an action of account. It was decided in *Cilly, Adm'r v. Tenney*, 31 Vt. 401, that the neglect of the tenant to properly cultivate the crops, whereby they were injured, and thus the joint profits in the products of the farm were diminished, was proper to be adjusted in an action of account.

The damages claimed here, were the tenant's share of the profits which might have been made from these cows, and by the principle of the decision quoted, might have been settled in the same way.

But breaches of contract on either part, whereby the making of profits has been prevented merely, we think need not necessarily be brought into the account, and may be sued for independently, and a remedy obtained by a recovery in damages for such breach. The plaintiff's claim for not being allowed to keep his oxen on the premises through the year, out of the products of the farm, stands on the same ground. It might be brought into the accounting, but may be sued for as a breach of the contract.

Another question is presented as to this claim of the plaintiff.

The plaintiff claimed that by the contract he had the right to keep his oxen on the place through the year out of the products of the farm.   The defendant Charles A. Scott denied this, and forbade his doing so, and ordered him to remove them from the farm, and the plaintiff did take them away.   The defendants claim that if the plaintiff was right as to what the contract was, all he had to do was to keep his oxen on the place, and that as he was in the sole possession of the farm and products, he was under no neecessity to yield to the defendants' claim as to what the contract was, and if he did so, it must be regarded as a voluntary acquiescence, and that he cannot say that he was prevented by the defendants from keeping his oxen there.

If the defendant Charles Scott, had done nothing more than to assert what he claimed was the contract, and that he should insist on his legal rights under it, and hold the plaintiff liable for the violation of the contract ; this view of the legal effect of the plaintiff's acquiescence was a sound one.

But the plaintiff claimed that Scott did more than to inform him what he claimed the contract was, and that he should assert his legal rights under it ; that in effect and substance he threatened to assert what he claimed to be his legal right by force, and violence, and that he yielded to the claim, not because he feared to assert his claim in a legal manner, but because he feared personal violence from Scott, and that he had good reason for such fear.   The court charged the jury that if the plaintiff had by the contract the right to keep the oxen on the premises, but took them away by direction of Scott, and because he had good reason to fear personal violence from Scott, if he did not yield to his direction, then the plaintiff could recover.   The defendants claim that the charge was unwarranted, because there was no evidence to show that the plaintiff had any reasonable ground to fear any such use of force from Scott.   It appears from the case, that there were no direct threats of force by Scott, but his language to the plaintiff as reported in the exceptions was exceedingly peremptory and commanding, much more so than was needful for the assertion of what he claimed was his legal right, and that he should insist on it.

The plaintiff testified that he believed he could only keep the

oxen there by the use of force.    What the plaintiff was justified in believing from the language of Scott, would depend greatly upon the manner and temper exhibited by Scott at the time, and we think it cannot be said there was no evidence proper to be submitted to the jury as to the plaintiff's having just cause to fear the use of force.

As to the items 1, 5 and 7—salt, plow-point, and milk-rack. It seems from the case that the plow-point and milk-rack were tools or implements to be used to carry on the farm, and manage the dairy, and to be furnished by the defendants, to be their property and remain theirs after the lease expired, and not subject to division. If the plaintiff furnished them by the defendants' request, we see no reason why they were not bound directly to pay for them, and no reason for bringing them into the farm account at all.

The salt, it seems, was to be furnished one-half by each party. It has been decided that in such contracts as this, when the parties were each to furnish half the seed, and one furnished more than his half, it should be settled in the general accounting. Salt for the cattle and dairy, would seem to stand on the same ground precisely.    But if one furnished the whole, by the express request of the other, and with an express promise to pay for his half, it might form the ground for an immediate and separate claim, as if he loaned him money to purchase his half.

The facts proved in relation to the calf, did not justify a recovery for it by the plaintiff.    The calf was part of the increase of the stock; profits to be divided.    It was not susceptible of division between them.    They must sell it, and divide the money, or one must take it, and pay the other for his half.    The defendants took it, and were to pay the plaintiff for his half.    This was a severance of their interest in the calf, but was it a severance of this from their joint dealings in the farm, so as to furnish a right of action by itself?    If so, then whenever either landlord or tenant takes any article of the joint products during the year, and a price is agreed between them, it forms a ground for a separate law suit.

From the very nature of such a contract, many articles of the joint products cannot be equally divided, and it is expected that

the larger share will be balanced by the other party having more of something else. It is usual for both parties to receive some portion of the joint products during the year, and when they do, that it is to be settled and balanced in the ultimate settlement and division. In order to create an independant cause of action by the acceptance of some portion, or article of the farm productions, an express contract should be shown to take it out of the general account. Nothing appears that there was any agreement when the defendants took this calf, that they were to pay for it presently, and nothing to show any expectation or design, except to make it an item against the defendants to come into their final division and settlement of the farm account.

It was one of the stipulations in the lease, that the plaintiff was to furnish Mrs. Scott such articles as she wanted, wood, butter, milk, &c., and be paid for them by the defendants.

It does not appear from the case whether the articles the plaintiff did furnish her from time to time, were his own sole property, or whether they were the products of the farm which belonged to them jointly.

If they were his sole property, we see no reason why he should not be allowed for them in this action, but if they were products of the farm which belonged to them jointly, then the reasonable implication would be that they were to be accounted for, toward the defendants' share of the profits and products of the farm, and the plaintiff could not maintain a separate action for them, without showing an express understanding, that they were not to enter into the general account.

Judgment reversed.