## STEWART AND ANOTHER *v.* WOODWARD.

### *Book Account.    Agency.    Liability of Third Persons to the Principal.*

Plaintiffs, who were merchant tailors at C., and had a branch house at M., sought to
recover in book account of defendant, a physician, for clothes, &c., delivered to
him by C., their general agent at M., upon the understanding between C. and de-
fendant that the goods should apply upon an existing indebtedness from C. to
defendant for medical attendance, defendant believing that C. had an interest in the
business, and authority so to dispose of the goods.    *Held,* plaintiffs having held out
C. as their general agent only, that defendant was bound to measure the scope of
his authority, and was liable upon his implied promise in this form of action for
the value of the goods.

BOOK ACCOUNT.    The auditor reported substantially as follows :

The account upon which the plaintiff seeks to recover, is for a
suit of clothes, and various articles of clothing.    The defendant
did not deny the receipt of any of the articles charged, except a
vest and a box of cuffs, and those items I disallowed for want of
proof.    The plaintiffs, I find, are entitled to recover for the re-
mainder of the account, unless the court should be of opinion,
upon the following statement of facts that the defendant is not
liable.

In January, 1874, the plaintiffs, who reside in Concord, N. H.,
and are there engaged in business as merchant tailors, started a
branch house in Montpelier.    Neither of the plaintiffs personally

superintended the business there, but they employed Fred. R. Stevens to assist in selling goods, and especially to look after the furnishing department, and A. S. Currier, whom they had before employed as a general agent, who was to do the cutting, and order, sell, and superintend the making up of the goods, and draw checks on the bank, in Montpelier, where the firm kept a deposit, to pay the current expenses of the firm. The agreed price for Currier's work was $18 per week. Soon after Currier commenced work he and his family fell ill, and he employed the defendant, who was a physician, until his bill was greater than the account in suit. Currier solicited the defendant to take his pay out of the store, and to have a new suit of clothes, and told him that the goods he took should apply in payment of his bill for medical attendance. The defendant took the goods, relying on what Currier told him, supposing that Currier had authority to dispose of the goods in that way, and supposing that he was getting pay for his account against Currier; otherwise he would not have taken the goods. At the time the goods were taken, they were charged to the defendant on the plaintiffs' books, and at the time the plaintiffs' business was closed in Monpelier, in July, 1874, had not been transferred thereon to the account of Currier. The plaintiffs made no question but that Currier had the right to use enough of their funds to pay himself his wages.

At the time plaintiffs closed out, owing to sickness, or other causes, Currier had taken from plaintiffs' funds more than the amount of his wages, and he took more than the amount of the account against the defendant, after the goods were bought. The defendant offered evidence tending to show that Currier had agreed to pay, and had paid, other of his private bills out of the store, to which the plaintiffs objected; but the auditor received it, subject to legal objection, and finds therefrom, only that such agreements and payments were made. If, upon the foregoing facts, the court should be of opinion that the plaintiffs are entitled to recover, I find due the plaintiffs, with interest to date, $61.73.

The defendant also offered evidence tending to show that one of the plaintiffs, before the house was established at Montpelier, had a conversation with the defendant in which he informed him that Currier was to have an interest in the business; but I do not find that, after looking up the business and deciding to establish the branch house, the plaintiffs ever held out that Currier was anything but an employee. The defendant also offered evidence tending to show that Currier often told different parties that he had an interest in the concern, to which the plaintiffs objected, but

which was received subject to legal objection. I find therefrom
that some parties, including the defendant, understood him to
mean that either he was a partner in the firm or had some interest
beyond that of an employee, although I do not find that Currier
ever gave that explanation of what he said ; and that that phrase
is just as consistent with the idea that his interest was only that of
an employee.   The sign at the store was, "T. W. & J. H. Stewart,
A. S. Currier, cutter " ;   and they advertised under that name in
one or more papers published at Montpelier.   I do not find that
Currier, as the general agent of the plaintiffs, had, in the manage-
ment of the business, authority co-extensive with that of either of
the partners ; but I do find that Currier, as such agent, had
authority to do all things necessary and proper to be done, and
that could legitimately be done, in running the business established
in Montpelier.

The court, at the March Term, 1877, REDFIELD, J. presiding,
rendered judgment, *pro forma,* on the report for the defendant ;
to which the plaintiffs excepted.

*Gleason & Field,* for the plaintiffs.

The plaintiffs are entitled to recover, for, in the conduct and
management of the business, Currier was a mere agent, and had
no right to sell his principal's goods in payment of his own debt,
nor to pledge them as security therefor, and Woodward was bound
to take notice thereof.   *Denison* v. *Tyson,* 17 Vt. 549, 555 ;
*Squires* v. *Barber,* 37 Vt. 558 ; *Pratt* v. *Willey,* 2 C. & P. 350 ;
*Whitney* v. *The State Bank,* 7 Wis. 620 ; *Henry* v. *Marvin,* 3
N. Y. 71.

The plaintiffs may recover in this form of action.   *Squires* v.
*Barber,* 17 Vt. 549 ; *Pratt* v. *Willey,* 2 C. & P. 350 ; *Hall &
Chase* v. *Peck & Co.* 10 Vt. 474 ; *Hickok* v. *Stevens,* 18 Vt. 111 ;
*Flower Brook Manuf'g Co.* v. *Buck,* 18 Vt. 238 ;  *Gallup* v. *Wal-
lace,* referred to in note to *Scott* v. *Lance,* 21 Vt. 508 ; *Jackman*
v. *Patridge,* 21 Vt. 558 ; *Waterman* v. *Stimpson,* 24 Vt. 508.

*Heath & Carleton,* for the defendant.

The plaintiffs cannot recover, because Currier was their general
agent, and they are bound by his acts, Story Cont. s. 134 ;  2
Kent Com. 620, 621.

The defendant cannot be prejudiced because the goods were charged to him generally, instead of to Currier. See *Morse* v. *Powers*, 45 Vt. 300.

But at all events the plaintiffs cannot recover in this form of action, which presupposes the right to make charge on book at the time of the delivery of the articles charged, and a sale of them with delivery and promise to pay. Here the goods were delivered and received in payment of a debt, and in no other way. If it be true that Currier had no right to deliver the goods nor the defendant to receive them, the most the plaintiffs can claim is, that the goods so delivered are still their property, and that they may recover their value in trover. See *McCrillis* v. *Banks & wife*, 19 Vt. 442; *Hall* v. *Eaton*, 12 Vt. 510; *Scott* v. *Lance*, 21 Vt. 507; *Peach* v. *Mills*, 14 Vt. 371.

The opinion of the court was delivered by

Powers, J. The report of the auditor states that Currier was the general agent of the plaintiffs in the conduct of their business at Montpelier. His authority there empowered him to do all things usual and useful to conduct the business of merchant-tailors. A general agency is, however, a restricted service. The agent cannot go outside the proper scope of his principal's business. So far as the business of his principal is concerned, he may do all that his principal could do. He cannot steal his principal's goods, nor appropriate them to his own use. He can only appropriate them to the use and profit of the principal. Persons dealing with a general agent are bound to measure the scope of his authority, as they are in dealing with a special agent. Although the compass of authority in the one case is wider than in the other, still, it is to be understood that it has its limits. It is to be understood that it is an *agent*, not a *principal*, who acts. *Lapoint* v. *Scott*, 36 Vt. 608.

The defendant's good faith in the transaction avails him nothing. It does not cure Currier's bad faith.

The plaintiffs have not misled the defendant. They notified everybody that Currier was an agent, authorized to sell their goods. Purchasers understood they were buying goods of the

11

plaintiffs through Currier as their salesman, and that the pay went, or should go, to the plaintiffs.

The defendant purchased the goods sued for, and attempted a mode of payment which hè was bound to know was unauthorized. He has had the goods and converted them to his own use, never having paid the plaintiffs for them. The implied promise arising from taking the benefit of the delivery of them, is sufficient to warrant a recovery in this action.

Judgment reversed, and judgment on the report for the plaintiffs.